[No. A053984. First Dist., Div. Five. Jan. 31, 1992.]

CYNTHIA McCARN, Plaintiff and Appellant, v.
PACIFIC BELL DIRECTORY, Defendant and Respondent.

**COUNSEL**

Rebecca J. Freeman for Plaintiff and Appellant.

Margaret DeBeers Brown, Sarah J. Diehl, Steven D. Rathfon and Gerard J. Donnellan for Defendant and Respondent.

**OPINION**

**LOW, J.*—**In this case we uphold the validity of a limitation of liability provision in a contract for telephone directory classified advertising, rejecting the claim that it violates the public policy against releases for negligence in contracts involving the public interest. We affirm a dismissal ordered after

---

*Retired Presiding Justice of the Court of Appeal, First District, sitting under assignment by the Chairperson of the Judicial Council.

summary judgment was granted against plaintiffs Cynthia and Michael McCarn[1] and in favor of defendant Pacific Bell Directory (Directory).

The McCarns operate a plumbing business which agreed to advertise in the Directory's "yellow pages" for Sonoma County North and Sonoma County South. They seek damages for the loss of business ensuing when the advertisement failed to appear in the Sonoma County North directory.

Cynthia McCarn signed a standard preprinted Directory advertising agreement. The contract consists of two pages. On the reverse (nonsignature) side of each page the terms and conditions were printed, including, in boldface type and all capitals, the following:

"LIMITATION OF LIABILITY FOR ERRORS AND OMISSIONS: READ CAREFULLY

"13. IN THE EVENT OF ANY ERROR IN OR OMISSION OF ALL OR ANY PART OF ANY ADVERTISING, THE PARTIES AGREE THAT PUBLISHER'S LIABILITY SHALL BE LIMITED TO A PRO RATA ABATEMENT OF THE CHARGES PAYABLE FOR SUCH ADVERTISING DURING THE IN-SERVICE LIFE OF THE DIRECTORY IN WHICH SUCH ERROR OR OMISSION OCCURS IN THE SAME PROPORTION THAT SUCH ERROR OR OMISSION REDUCES THE VALUE OF THE ADVERTISING. IN NO EVENT SHALL PUBLISHER'S LIABILITY TO ADVERTISER FOR CLAIMS OF ANY KIND WHATSOEVER FOR LOSS OR DAMAGE ARISING OUT OF OR IN ANY WAY CONNECTED WITH ANY SUCH ERROR OR OMISSION EXCEED THE TOTAL OF SUCH CHARGES PAYABLE FOR THE ADVERTISING. IN NO EVENT SHALL PUBLISHER BE LIABLE FOR ANY LOSS OF ADVERTISER'S BUSINESS, REVENUES OR PROFITS, THE COST TO ADVERTISER OF OTHER FORMS OF ADVERTISING, OR SPECIAL, CONSEQUENTIAL, INDIRECT OR PUNITIVE DAMAGES OF ANY NATURE. IN NO EVENT SHALL PUBLISHER BE LIABLE FOR ERRORS OR OMISSIONS OR OTHER WRONGFUL CONDUCT OF ANY THIRD PARTY, INCLUDING AUDIOTEXT AND OTHER INFORMATION PROVIDERS WHOSE SERVICE MAY BE MENTIONED IN ANY ADVERTISING. THE FOREGOING PROVISIONS SHALL APPLY TO THE FULL EXTENT PERMITTED BY LAW AND REGARDLESS OF WHETHER ADVERTISER'S CLAIM IS BASED UPON CONTRACT, TORT (INCLUDING NEGLIGENCE OF WHATEVER DEGREE), STRICT LIABILITY OR OTHERWISE AND SHALL CONSTITUTE PUBLISHER'S SOLE LIABILITY TO ADVERTISER AND ADVERTISER'S EXCLUSIVE REMEDY AGAINST PUBLISHER IN THE EVENT OF SUCH ERROR OR OMISSION AND ADVERTISER SPECIFICALLY WAIVES ANY RIGHT TO ANY SUCH CLAIM FOR LOSS OR DAMAGE. HOWEVER, IF ADVERTISER

---

[1] Only plaintiff Cynthia McCarn has appealed the judgment.

DOES NOT DESIRE TO WAIVE SUCH CLAIM FOR LOSS OR DAMAGE, ADVERTISER CAN AGREE TO PAY ADDITIONAL CHARGES WHICH WILL BE DETERMINED BY MUTUAL AGREEMENT BETWEEN THE ADVERTISER AND PUBLISHER. THESE ADDITIONAL CHARGES WILL BE BASED ON THE TYPE OF BUSINESS, THE MONTHLY BILLING, AND OTHER FACTORS OF RISK. IF ADVERTISER AND PUBLISHER AGREE TO AN APPROPRIATE AMOUNT OF ADDITIONAL CHARGES, THE ADVERTISER, IN THE EVENT OF ERRORS OR OMISSIONS IN THE DIRECTORY, MAY PURSUE ALL HIS LEGAL REMEDIES FOR SUCH ERRORS AND OMISSIONS. ADVERTISERS INTERESTED IN OBTAINING ADDITIONAL INFORMATION REGARDING THIS OPTION SHOULD CALL THE DIRECTORY SERVICE OFFICER MANAGER: NORTHERN CALIFORNIA AND NEVADA 800-228-7102, SOUTHERN CALIFORNIA 800-252-2054."

On the signature side of each page is an additional notice, printed in red ink (the rest of the printed language is blue) and in bold capitals:

"PARAGRAPH 13 SPECIFICALLY WAIVES THE RIGHT TO DAMAGES FOR ERRORS IN OR OMISSIONS OF YOUR ADVERTISING UNLESS ADDITIONAL CHARGES, DETERMINED BY MUTUAL CONSENT, ARE PAID."

McCarn contends the attempted limitation of the Directory's liability to the cost of the advertisement is unenforceable because the contract is one "affected with a public interest." (*Tunkl* v. *Regents of University of California* (1963) 60 Cal.2d 92, 98 [32 Cal.Rptr. 33, 383 P.2d 441, 6 A.L.R.3d 693].)

The *Tunkl* court provided an outline of the characteristics which mark a contract as involving the public interest: "[1] It concerns a business of a type generally thought suitable for public regulation. [2] The party seeking exculpation is engaged in performing a service of great importance to the public, which is often a matter of practical necessity for some members of the public. [3] The party holds himself out as willing to perform this service for any member of the public who seeks it, or at least for any member coming within certain established standards. [4] As a result of the essential nature of the service, in the economic setting of the transaction, the party invoking exculpation possesses a decisive advantage of bargaining strength against any member of the public who seeks his services. [5] In exercising a superior bargaining power the party confronts the public with a standardized adhesion contract of exculpation, and makes no provision whereby a purchaser may pay additional reasonable fees and obtain protection against negligence. [6] Finally, as a result of the transaction, the person or property of the purchaser is placed under the control of the seller, subject

to the risk of carelessness by the seller or his agents." (60 Cal.2d at pp. 98-101, fns. omitted.) Exculpatory clauses which fit this model are unenforceable under Civil Code section 1668. (60 Cal.2d at p. 95.)

 In reviewing a grant of summary judgment in favor of a defendant, we seek to determine whether there are any issues of material fact requiring the procedures of a trial, or whether the undisputed facts show the defendant entitled to prevail as a matter of law. (*Molko* v. *Holy Spirit Assn.* (1988) 46 Cal.3d 1092, 1107 [252 Cal.Rptr. 122, 762 P.2d 46].) Our task in this case is to decide whether the undisputed facts show, as a matter of law, that this contract is not within the class of "public interest" contracts described in *Tunkl.*

Two of the *Tunkl* factors give rise to no serious question in this case. Directory concedes that its advertising services are offered to the general public (factor 3). Although the parties disagree as to whether plaintiff's "property" was placed in defendant's control (factor 6), it is undisputed that the placement, printing and distribution of the advertisement were entirely within Directory's control, and subject to the risk of its carelessness, thus satisfying the sixth characteristic in substance.

(1) *Suitability of the business for public regulation.* Prior to 1979 the publication of telephone directories was considered so closely connected with the provision of telephone service as to come within the regulatory jurisdiction of the Public Utilities Commission (PUC) over that service. (See *Dollar-A-Day Rent-A-Car Systems, Inc.* v. *Pacific Tel. & Tel. Co.* (1972) 26 Cal.App.3d 454, 456-458 [102 Cal.Rptr. 651].) Pacific Telephone and Telegraph Company rules, approved by the PUC, limited the company's liability for errors in directory listing to the cost of the advertisement. (See *Davidian* v. *Pacific Tel. & Tel. Co.* (1971) 16 Cal.App.3d 750, 753-757 [94 Cal.Rptr. 337].)

In 1979 section 728.2 of the Public Utilities Code was added, providing that the PUC was to have "no jurisdiction or control over classified telephone directories . . . including the charges for and the form and content of such advertising, except that the commission shall investigate and consider revenues and expenses . . . [from] such advertising for purposes of establishing rates for other services offered by telephone corporations." (Stats. 1979, ch. 547, § 1, p. 1751.) In 1982 the section was amended to provide that the PUC could reestablish regulatory jurisdiction if it found that without jurisdiction it would be impaired, because of "any federal action," in collecting revenue and expense information. Renewed regulation would be

limited to the rates and charges for commercial directory advertising. (Pub. Util. Code, § 728.2, subd. (b); Stats. 1982, ch. 1175, § 1, p. 4197.)

■ While directory advertising is not currently regulated, the Legislature has given the PUC conditional authority to regulate it in certain respects if circumstances warrant. Although "[c]omplaints by any corporation or person regarding directory advertising" would not be within the PUC's jurisdiction even if it decided to reestablish regulation (Pub. Util. Code, § 728.2, subd. (b)(2)(v)), other aspects of the relationship between the directory company and the advertisers would be controlled. The classified directory is thus "a business of a type generally thought suitable for public regulation." (*Tunkl* v. *Regents of University of California, supra,* 60 Cal.2d at p. 98, fn. omitted.)

(2) *Importance of the service to the public.* McCarn argues that the yellow pages directory, distributed as it is to every home and office, is a uniquely vital means of advertising for a small business, and particularly for her plumbing business which does not have street visibility and which is needed at unexpected times. Directory characterizes its service as merely one of many advertising media available to the business person, not a matter of practical necessity to the public.

Directory relies on cases which have viewed the "practical necessity" factor narrowly, restricting *Tunkl*'s application to "medical, legal, housing, transportation or similar services 'which must *necessarily* be used by the general public.' " (*Appalachian Ins. Co.* v. *McDonnell Douglas Corp.* (1989) 214 Cal.App.3d 1, 29 [262 Cal.Rptr. 716], italics in original [satellite launching not within category]; *Hulsey* v. *Elsinore Parachute Center* (1985) 168 Cal.App.3d 333, 343 [214 Cal.Rptr. 194] [same as to sport parachuting]; see also *Buchan* v. *United States Cycling Federation, Inc.* (1991) 227 Cal.App.3d 134, 153 [277 Cal.Rptr. 887] [bicycle racing not an essential service "which must be involuntarily utilized by the general public."].)

In *Pelletier* v. *Alameda Yacht Harbor* (1986) 188 Cal.App.3d 1551, 1555 [230 Cal.Rptr. 253], however, this court rejected the contention that the service involved must be a "necessity of life" such as food, housing or medical care. We held that the lease of a 42-foot covered berth in a marina was a matter of practical necessity because, "[f]or persons with boats, the availability of berths in harbors is a matter of practical necessity." (*Ibid.*)

■ Yellow pages advertisement is certainly of importance to a greater section of the public than berths for yachts. It may be the only practical means of advertising for many small businesses. As one of the most widely used means of commercial communication in the United States, it is accurately characterized as "a matter of practical necessity for some members of

the public." (*Tunkl* v. *Regents of University of California, supra*, 60 Cal.2d at p. 99, fn. omitted.)

It is misleading, however, to discuss this factor in absolute terms. Classified business directory advertising is of practical importance to more members of the public than bicycle racing, recreational parachuting, or the berthing of yachts. But it is not as great a public necessity as medical care or housing. The imbalance in bargaining power resulting from the need for the service is likely to be correspondingly less than in the case of the true necessities of life.

(3) *Inequality of bargaining power.* It is undisputed that Directory provided the only universally distributed classified business directory in plaintiff's geographical area of operation. Without a greater factual record, however, we are unable to determine whether McCarn had any other practical way of advertising her business, and hence we cannot know the exact extent to which Directory enjoyed an advantage in negotiating strength. Nor have we any way of knowing the number of businesses which are primarily dependent upon the yellow pages to attract new customers. ■ Following the rule that doubts on factual matters must be resolved in favor of the party opposing summary judgment (*Molko* v. *Holy Spirit Assn., supra*, 46 Cal.3d at p. 1107), we assume for present purposes that Directory "possesses a decisive advantage of bargaining strength against any member of the public who seeks [its] services." (*Tunkl* v. *Regents of University of California, supra*, 60 Cal.2d at p. 100, fn. omitted.)

(4) *Presentation of the exculpatory clause as a contract of adhesion.* ■ The preprinted contract presented to McCarn contained, in the same paragraph as the limitation of liability, an express offer to enter into negotiations to eliminate the limitation: "However, if advertiser does not desire to waive such claim for loss or damage, advertiser can agree to pay additional charges which will be determined by mutual agreement between the advertiser and publisher." The advertiser is informed of the "risk factors" Directory considers relevant to determining the extra charge, and is invited to call a toll-free number for more information. The notice on the agreement's front page repeats that the limitation of liability may be eliminated if an additional charge is paid.

Whatever advantage in bargaining power Directory possesses, therefore, it does not use that advantage to "confront[] the public with a standardized adhesion contract of exculpation, [with] no provision whereby a purchaser may pay additional reasonable fees and obtain protection against negligence." (*Tunkl* v. *Regents of University of California, supra*, 60 Cal.2d at

pp. 100-101, fns. omitted.) To the contrary, Directory expressly offers to renegotiate the exculpatory term with any advertiser.

This case is similar to *Cregg* v. *Ministor Ventures* (1983) 148 Cal.App.3d 1107 [196 Cal.Rptr. 724], in which a lease for storage space contained an exculpatory clause but the lessor offered each lessee optional insurance for an additional fee. That contract was held not to come within the *Tunkl* "public interest" category because the plaintiff "was not subjected to an adhesive contract under which she must accept the exculpatory clause or forego the lease." (*Cregg*, *supra*, at p. 1111.)

■ The existence of an offer to negotiate the limits of liability in the preprinted contract is fatal to plaintiff's public policy claim. The essence of the *Tunkl* policy is that individuals should not be compelled by practical necessity to agree to limitations of liability. The public should not be subjected to "a compulsory assumption of the risk[s] of another's negligence." (*Tunkl* v. *Regents of University of California*, *supra*, 60 Cal.2d at p. 101.) The limitation in Directory's contract was simply not compulsory—it was negotiable.

It is true that "a score of 100 percent on the *Tunkl* test is not required to invalidate an exculpatory clause on public policy grounds." (*Buchan* v. *United States Cycling Federation, Inc.*, *supra*, 227 Cal.App.3d at p. 161 (dis. opn. of Johnson, J.).) One must recognize, however, that the *Tunkl* factors are interconnected, and the absence of one may reduce or eliminate the significance of others. The practical necessity of the service (factor 2) and the resulting bargaining edge enjoyed by the provider (factor 4) are important chiefly because they allow the provider to confront the public with an adhesive contract of exculpation (factor 5). Here, Directory has not used its bargaining strength to present customers with an adhesive limitation of liability—presumably because it was advised that such a limitation might not withstand a *Tunkl* analysis.

■ McCarn argues that her ability to negotiate different terms is a question of fact, precluding summary judgment. It is speculation to ask whether Directory *would* have agreed to a reasonable additional fee had McCarn attempted to negotiate one. She has not alleged that Directory refused to negotiate an additional fee in good faith, and she could not so allege; McCarn testified at her deposition that she did not read the paragraph containing the offer to negotiate, and did not call the toll-free telephone number to discuss eliminating the limitation of liability. We do not decide here whether a plaintiff who attempted and was unable to agree with Directory on a reasonable fee could succeed in having the exculpatory clause invalidated under *Tunkl*.

█ Plaintiff also argues there is a question of fact as to whether the exculpatory clause was brought to her attention when she signed the contract. At her deposition McCarn testified she never read paragraph 13. In her declaration she stated she felt hurried at the time she signed the contract because her appointment with the Directory representative was his last appointment of the day and he was in "an obvious rush" to finish and leave the office. She testified that she nevertheless asked the representative some questions about the price and discounting terms and that he answered them.

Whether the clause was brought to McCarn's attention is immaterial to plaintiff's claim that the contract is in violation of public policy. The fact that a term was not brought to the buyer's notice, and that she did not read it because she felt hurried, may be relevant to the "surprise" element of a claim of *unconscionability* made under Civil Code section 1670.5. (See *Appalachian Ins. Co.* v. *McDonnell Douglas Corp.*, *supra*, 214 Cal.App.3d at p. 22.) A public policy claim under Civil Code section 1668 and *Tunkl*, in contrast, does not depend on the element of surprise; a limitation of liability which is invalid under *Tunkl* will be so even if it was fully read and understood by the buyer—public policy forbids compelling even a knowing buyer to make such an agreement. In the trial court as on appeal, plaintiff's claim was one of public policy invalidity, not unconscionability as such.[2]

The trial court did not err in granting summary judgment for Directory. There were no triable issues of fact relating to plaintiff's claim that the exculpatory clause in the contract with Directory violated public policy.

The judgment is affirmed.

King, Acting P. J., and Haning J., concurred.

Appellant's petition for review by the Supreme Court was denied April 22, 1992.

---

[2]In her opposition to the motion plaintiff did state that the clause was "unconscionable," but her argument consisted of an analysis of the public policy factors set out in *Tunkl*. Civil Code section 1670.5 was not cited, and is not cited on appeal.