Doerfer, J.
The plaintiff, R-1 Associates, Inc. (“R-1”), brought this action against the defendant, Goldberg-Zoino & Associates, Inc. (“GZA”), alleging negligence, breach of contract, breach of warranties, and violation of G.L.c. 93A, §11. The defendant has now moved for partial summary judgment on the issue of the limitation of liability provision in the contract and on Count IV, which seeks relief under G.L.c. 93A, §11. For the reasons which follow, the defendant’s motion for partial summary judgment is allowed in part and denied in part.
BACKGROUND
R-1 and its agent, ACS Development Corporation (“ACS”), were involved in the development of a five-acre site in the Murray Industrial Park in Chelsea, Massachusetts. Anthony Simboli (“Simboli”), president of R-1 and ACS, owns both entities. For the purposes of this motion, the parties agree that ACS is an agent of R-1.
*220 Waterfield Construction Company (“Waterfield”) was to submit a design build bid for the development project. In 1987, Simboli authorized John Finamore (“Finamore”), president of Waterfield, to hire GZA for a preliminary site assessment and geotechnical survey. R-1 agreed that it would pay for GZA’s services
On December 17, 1987, GZA sent Waterfield a contract proposal for the preliminary geotechnical and environmental services for the Chelsea site. On April 1, 1988, Finamore executed and returned the contract to GZA. The contract included GZA’s Schedule of Fees and Statement of Terms and Conditions. The contract provided, in relevant part, that:
Company’s liability to Client based upon or arising out of Company’s alleged failure to observe the standard of care set forth in Section 6 in its professional acts is limited, in amount, to the aggregate sum of $50,000 or Company’s aggregate fees for services rendered on the subject project, whichever amount is greater.
The contract further provided that:
Company may, upon Client’s written request, agree to increase the limit of Company’s liability for professional errors, acts or omissions in consideration of payment by Client additional monetary and other consideration.
No one requested an increase in the limit of GZA’s liability.
GZA sent its bills to Waterfield through April 7, 1988. Beginning on April 29, 1988, GZA’s bills were sent to ACS. During 1988, GZA performed the environmental site assessment on the Chelsea site. On May 31, 1988, GZA sent the preliminary site assessment report to ACS. In the report, GZA described the environmental site assessment and the services performed. GZA concluded that:
(b)ased on observations made during these studies it is GZA’s opinion that the available evidence does not indicate the presence of hazardous materials or oil in soil or groundwater at the subject site. However, underground storage tanks may exist at the site.
In August of 1989, oil was discovered in the groundwater and soil on a portion of the site. R-l aborted the project and now seeks to recover damages for monies it spent on the project before it was cancelled.
DISCUSSION
Summary judgment shall be granted where there are no genuine issues as to any material fact and where the moving party is entitled to judgment as a matter of law. Cassesso v. Commissioner of Correction, 390 Mass. 419, 422 (1983); Community National Bank v. Dawes, 369 Mass. 550, 553 (1976); Mass.R.Civ.P. 56(c). The moving party bears the burden of affirmatively demonstrating the absence of a triable issue, “and [further] that the moving party is entitled to judgment as a matter of law.” Pederson v. Time, Inc., 404 Mass. 14, 16-17 (1989).
I.
In his deposition, Simboli concedes that he authorized Wáterfield to “go ahead, hire GZA, contract with them and do whatever was necessary to have GZA go out and do the site assessment and the geotechnical work” provided that he “understood what the costs were going to be.” (Dep. of Anthony Simboli, p. 284, 286.) Thus, it is undisputed that Waterfield was given actual authority to contract with GZA for the environmental site assessment. R-l presently contends, however, that it did not authorize Waterfield to sign a written contract limiting GZA’s liability to $50,000.
The Restatement (Second) of Agency, §51 provides:
§51. Authority Inferred from Authorizing Making of Contract
Unless otherwise agreed, authority to make a specified contract includes authority:
a) to make it in a usual form and with usual terms or, if there are not usual forms or terms, in an appropriate way; and
b) to do other acts incidental to its making which are usually done or which, if not usually done, are reasonably necessary for making it.
The evidence in the record indicates that the contract executed by Waterford and GZA was a standard form GZA contract with its usual terms. In fact, just four months earlier, ACS signed a nearly identical contract with GZA, which also contained a $50,000 limitation of liability provision, for a different project (Lawrence Plaza). (Ex. 8 to Defendant’s Motion, Aff. of Michael A. Powers with attached Ex. B.) Michael A. Powers, a Senior Vice President and Senior Principal of GZA, averred that the limitation of liability clause in the GZA contract “is the usual and standard form used by GZA since at least April 1986 and during 1987, 1988 and thereafter” for the hundreds of site assessments performed by GZA. (Ex. 8 to Defendant’s Motion, Aff. of Michael A. Powers, s 8.) Finally, at oral argument, R-l’s counsel conceded that such provisions are typical in this business, although the amount of the limitation varies. In the absence of any evidence to the contrary, the court concludes that Waterfield’s execution of the contract falls squarely under Section 51(a) of the Restatement (Second) of Agency.
The court notes that, in Simboli’s affidavit, which is the subject of a motion to strike, he appears to aver that he did not even authorize Finamore to sign a contract with GZA on behalf of R-l.[1] In his affidavit, Simboli states, in relevant part, that:
I nor any other member of ACS Development Corporation, and/or R-l Associates, Inc. had ever authorized John Finamore, Waterfield Construction, to sign an agreement on behalf of ACS Development Corp., and or R-l Associates . . .
*221 (Ex. 1 to Plaintiffs Opposition, Aff. of Anthony C. Simboli, ¶8.) This statement is in conflict with his deposition testimony and the verified complaint.
In his deposition, Simboli conceded that he authorized Waterfield “to generally go ahead, hire GZA, contract with them and do whatever was necessary to have GZA go out and do the site assessment and the geotechnical work” provided that Simboli “understood what the costs were going to be.” (Dep. of Anthony C. Simboli, p. 284.) Moreover, the verified complaint contains no mention of any limitation on Waterfield’s authority. The complaint provides that:
GZA . . . submitted a proposal to John Finamore, Jr. of Waterfield Construction Company (who was to submit a design build bid for the project), and who was acting as an agent for R-l Associates . . .
Complaint, ¶8. The complaint further states:
Waterfield Construction Company acting as an agent for R-l Associates and ACS Development Corporation, employed GZA to conduct a site assessment and other geotechnical engineering work pursuant to the terms of the proposal.
Complaint, ¶12 (emphasis added).
Simboli “cannot create a disputed issue of fact by the expedient of contradicting by affidavit statements previously made under oath at a deposition.” Palermo v. Brennan (Suffolk County Superior Court, Civil Action No. 92-1083-E, July 28, 1994), 2 Mass. L. Rptr. No. 25, 495, 497 (October 24, 1992), quoting O’Brien v. Analog Devices, Inc., 34 Mass.App.Ct. 905, 906 (1993); cf. Crowley v. Polar Corp. (Worcester County Superior Court, Civil Action No. 93-2088, February 10, 1995), 3 Mass. L. Rptr. No. 25, 556 (June 19, 1995) (plaintiffs detailed affidavit, which was filed late in the litigation, created a disputed issue of fact because earlier deposition testimony was unclear on the issue).
More importantly, the record is devoid of any evidence which suggests that site assessments are ever conducted in the absence of a written contract. In fact, the evidence is quite to the contrary. (Ex. 8 to Defendant’s Motion, Aff. of Michael A. Powers, ¶4, with attached Exhibit B; Ex. 6 to Defendant’s Motion, Aff. of Romano J. Micchiche, ¶4,7 with attached Exhibit A.) Thus, R-l’s most recent contention that it did not authorize Waterfield to sign any type of contract, even though R-l’s own agents had signed a standard GZA contract in the past, is both factually and legally insupportable.
The United States Court of Appeals for the First Circuit (“First Circuit”) in Transurface Carriers, Inc. v. Ford Motor Co., 738 F.2d 42 (1984), reached a similar conclusion. In Transurface, the plaintiff unsuccessfully argued that its agent, an independent contractor, had the authority to purchase a truck, but did not have the authority to bind the plaintiff to a limitation of warranties which was contained on the order form. The First Circuit granted summary judgment to the defendant. The Court stated that “(t]he law of principal and agent is clear that conferring authority to conduct a transaction gives authority to conduct acts incidental to the transaction.” Id. at 45. The Court rejected the plaintiffs contention that it was not bound to the disclaimer because it never received the order form, noting that “[r]eceipt by an agent is considered receipt by his principal.” Id., citing Levin v. Berley, 728 F.2d 551, 553 (1st Cir. 1984). Accordingly, under both the Restatement (Second) of Agency and Transurface, the court reaches the conclusion that Waterfield had the apparent authority to execute the contract with GZA.
II.
R-l further contends that, even if Waterfield had the authority to enter into the contract, the limitation of liability/indemnity provision is void against public policy. Provisions of a contract will not be enforced if contrary to public policy. Massachusetts Municipal Wholesale Electric Co. v. Danvers, 411 Mass. 39, 55 (1991). R-l asserts that, through the limitation of liability provision, GZA is attempting to bargain away its statutory obligations under G.L.c. 2IE. See Henry v. Mansfield Beauty Academy, 353 Mass. 507, 511 (1968) (“[A] contract cannot serve to shield [a] defendant from responsibility for violation of a statutory duty”). R- l’s interpretation of G.L.c. 2 IE is misguided.
“The Massachusetts Oil and Hazardous Material Release Prevention and Response Act” is directed toward persons responsible for the release of hazardous wastes. 310 CMR §30.0002 sets forth the purpose of G.L.c. 21E:
These regulations are intended to protect public health, safety, and welfare, and the environment, by comprehensively regulating transport, treatment, disposal, and use of hazardous waste in Massachusetts.
310 CMR §30.0002 (emphasis added). Environmental engineers performing routine site assessments are not “persons who may be liable” under G.L.c. 21E, §5(a)(l-5). Further, there are no provisions in G.L.c. 2 IE which regulate testing performed by engineering firms under private contracts with individuals seeking to purchase private property.[2] Thus, a provision which limits GZA’s liability for that testing will not shield GZA from some nonexistent statutory responsibility.
R-l further contends that, even if G.L.c. 2 IE is not implicated, the limitation of liability is still against public policy. The Massachusetts Appeals Court has held that “(t]he public interest in the enforcement of the laws of the Commonwealth cannot be defeated by failures of public officials to perform their duties.” White Construction Co. Inc. v. Commonwealth, 11 Mass.App.Ct. 640, 648 (1981). However, the Court explicitly chose not to decide “whether in Massachusetts a person licensed by the state to practice a profession may limit prospectively his liability for errors and omissions.” Id. at 649, n.15. Instead, the *222 Court adopted the balancing test set forth in Tunkl v. Regents of California, 60 Cal.2d 92, 96 (1963).
In Tunkl, the court listed six factors tobe considered in determining whether an exculpatory contract is void as contrary to the public interest:
(1) It concerns a business of a type generally thought suitable for public regulation.
(2) The party seeking exculpation is engaged in performing a service of great importance to the public, which is often a matter of practical necessity for some members of the public.
(3) The party holds himself out as willing to perform this service for any member of the public who seeks it, or at least for any member coming within certain established standards.
(4) As a result of the essential nature of the service in the economic setting of the transaction, the party invoking exculpation possesses a decisive advantage of bargaining strength against any member of the public who seeks his services.
(5) In exercising a superior bargaining power the party confronts the public with a standardized adhesion contract of exculpation, and makes no provision whereby a purchaser may pay additional reasonable fees and obtain protection against negligence.
(6) Finally, as a result of the transaction, the person or property of the purchaser is placed under the control of the seller, subject to the risk of carelessness by the seller or his agents.
“The essence of the Tunkl policy is that individuals should not be compelled by practical necessity to agree to limitations of liability.” McCarn v. Pacific Bell Directory, 3 Cal.App.4th 173, 182 (1992). In the present case, however, most of these factors are lacking. Unlike the defendant in Tunkl (Pacific Bell Directory), GZA did not have “a decisive advantage of bargaining strength” over R-l. Although R-l needed an environmental site assessment, GZA was not the only business available to meet this need. Compare McCarn v. Pacific Bell Directory, 3 Cal.App.4th 173, 181 (1992) (“Directory provided the only universally distributed classified business directory in plaintiffs geographical area of operation”). Further, GZA did not confront R-l with a “standardized adhesion contract of exculpation” with no provision whereby R-l could “pay additional reasonable fees and obtain protection against negligence.” The contract provided that GZA may “agree to increase the limit of Company’s liability for professional errors, acts or omissions in consideration of payment by Client additional monetary and other consideration.” It is undisputed that no one ever requested an increase in the limit of GZA’s liability. “The existence of an offer to negotiate the limits of liability in the preprinted contract is fatal to the plaintiffs public claim.” McCarn, supra at 182; see also Kumar v. Nye’s Japenamelac (Middlesex Superior Court Civil Action No. 863667 (1993)).[3]
The court thus concludes that GZA’s limitation of liability does not offend public policy. On the contrary, this contract arose out of a private, voluntary transaction in which one party, for consideration, agreed to shoulder a risk which the law would otherwise have placed upon the other party. Therefore, GZA’s liability in this suit is limited to an amount not to exceed $50,000.
As GZA contends, this limitation of liability is applicable to R-l’s G.L.c. 93A claim as well. When a “c. 93A claim is duplicative of its breach of warranty claim,” the limitation of liability clause similarly applies to this cause of action. Canal Electric Co. v. Westinghouse Electric Corp., 406 Mass. 369, 378 (1990) (where, in commercial action, G.L.c. 93A claim is duplicative of contract claim, plaintiff can validly waive G.L.c. 93A, §11 claim by assenting to limitation of liability clause). Accordingly, any recovery under G.L.c. 93A will likely be limited to actual damages and attorneys fees. Canal, supra at 378-79, citing Linthicum v. Archambeault, 379 Mass. 381, 387 (1979). The court notes that “(n]othing suggests that, in these circumstances, the waiver of the c. 93A, §11 claim would frustrate the public policies of the statute.” Canal, supra at 379.
IIÍ.
Finally, GZA has moved for “full” summary judgment on R-l’s G.L.c. 93A claim because it is “mere repetition of the claims for breach of contract and breach of warranty.” While this may be true, it is clear that the plaintiff is entitled to plead alternative theories. See Canal, supra at 379 (“[T]he c. 93A, §11 claim arises from the breach of warranty and ... is an alternative theory of recovery under the contract”).
Moreover, contrary to GZA’s contention, “(g)enerally, a breach of warranty constitutes a violation of G.L.c. 93A, §2.” Maillet v. ATF-Davidson Co., 407 Mass. 185, 193 (1990). “It is not a defense to a c. 93A claim that the defendant’s conduct was negligent rather than intentional ...” Maillet, supra at 193, quoting Linthicum, supra at 388. “Neither intent to engage in an unlawful act nor knowledge of its unlawfulness is required in order to establish liability.” Maillet, supra at 193, quoting Linthicum, supra at 388. Accordingly, at this juncture, GZA is not entitled to summary judgment on R-l’s claim for violation of G.L.c. 93A.
ORDER
For the foregoing reasons, the defendant Goldberg-Zoino & Associates’ Motion for Summary Judgment is ALLOWED as to the limitation of liability to $50,000 and DENIED as to Count IV (G.L.c. 93A).

For the purposes of this motion, the court has chosen to consider all submissions.

R-l’s contention that G.L.c. 21E, §5[f) bars GZA’s use of a contractual limitation is incorrect. As previously discussed, environmental engineers performing routine site assess- *223 merits are not “persons who may be liable” under G.L.c. 2 IE, §5(a)(l-5). More importantly, in Hays v. Mobil Oil Corp., 736 F.Supp. 387 (D. Mass. 1990), the Court interpreted §5(f) to “provide only that contractual indemnification clauses will not shield a liable pariy from a suit by the state or injured third parties to recover damages and cleanup costs.” Id. at 393. “In other words, indemnification clauses are still permitted to allocate the burdens of risks and costs among otherwise liable parties.” Id.

While Simboli contends that he never saw this contract, “[rjeceipt by an agent is considered receipt by his principal.” Transurface Carriers, Inc. v. Ford Motor Co., 738 F.2d 42, 45 (1984). Further, the failure to read a contract signed by one’s agent is no defense to liability. “One who signs a writing that is designed to serve as a legal document... is presumed to know its contents.” Hull v. Attleboro Savings Bank, 33 Mass.App.Ct. 18, 24 (1992).