Filed 8/25/22  Velasquez v. Northgate Gonzalez Markets CA2/2

# NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION TWO

| | |
|---|---|
| YADIRA VELASQUEZ, | B309831 |
| Plaintiff and Respondent, | (Los Angeles County Super. Ct. No. 20STCV28061) |
| v. | |
| NORTHGATE GONZALEZ MARKETS, INC. et al., | |
| Defendants and Appellants. | |

APPEAL from an order of the Superior Court of Los Angeles County, Michael P. Linfield, Judge.  Reversed with directions.

Pearlman Brown & Wax, Corinne D. Spencer, and Antwoin D. Wall for Defendants and Appellants.

Employee Justice Legal Group, Kaveh S. Elihu, and Sylvia V. Panosian for Plaintiff and Respondent.

* * * * * *

Yadira Velasquez (plaintiff) sued her former employer for a variety of employment-related and other claims. The employer moved to compel arbitration of the dispute pursuant to two different arbitration agreements—one plaintiff indisputably signed in 2015 and a second the employer claimed plaintiff signed in 2018. The trial court denied the motion, finding that plaintiff never signed the 2018 agreement and that the employer expressed an intent to "replace" the 2015 agreement with the 2018 agreement. Although the trial court's ruling denying to compel arbitration based on the 2018 agreement is supported by substantial evidence, the court erred in refusing to give effect to the 2015 agreement. Accordingly, we reverse and remand with instructions to order the matter to arbitration.

## FACTS AND PROCEDURAL BACKGROUND

### I. Facts

#### A. *Hiring, employment, and termination*

In July 2015, plaintiff was hired by Northgate Gonzalez Markets, Inc. (Northgate) to work as a "cocina clerk" in its Bell, California grocery store. In December 2018, plaintiff "severely injured" her hand. She was fired the next month.

### B. *Arbitration agreements*

#### 1. *The 2015 Agreement*

On July 6, 2015, plaintiff was presented with a document called "Mutual Binding Arbitration Agreement" (the 2015 Agreement) as part of her new employee intake. She signed the 2015 Agreement.

With regard to its scope, the 2015 Agreement requires both plaintiff and Northgate to arbitrate "any claim, dispute, and/or controversy . . . arising from, relating to, or having any relationship with or connection whatsoever" to plaintiff's "employment" or "other association" with Northgate.

With regard to procedures during arbitration, the 2015 Agreement provides in pertinent part that (1) the arbitrator "shall be a retired Judge, or otherwise qualified individual to whom the parties mutually agree, and shall be subject to disqualification on the same grounds as would apply to a judge of such court," and (2) the arbitrator "shall have the authority to order such discovery, by way of deposition, interrogatory, document production, or otherwise, as the arbitrator considers necessary to a full and fair exploration of the issues in dispute, consistent with the expedited nature of arbitration."

#### 2. *The 2018 Agreement*

In early 2018, Northgate circulated a revised arbitration agreement (the 2018 Agreement) on a web-based platform where employees could log in with unique credentials to access documents related to their employment.

Plaintiff and Northgate dispute whether plaintiff electronically acknowledged—and thereby agreed to—the 2018 Agreement. Northgate contends that plaintiff acknowledged the 2018 Agreement on the platform on March 28, 2018. Plaintiff, on

3

the other hand, contends she has no memory of seeing the 2018 Agreement or being instructed on how to access it on the platform.[1]

## II.    Procedural Background

In July 2020, plaintiff sued Northgate as well as the director of the store where she worked (collectively, defendants).[2] In her complaint, plaintiff alleged 11 causes of action[3]; as relief,

---

[1]    On appeal, plaintiff submitted additional evidence with her respondent's brief that she claims shows she did not work on the day the acknowledgment was time-stamped on the web-based platform.  We grant defendants' motion to strike this improperly filed evidence, and we deny plaintiff's motion to augment filed in an effort to circumvent defendants' well-taken motion to strike.

[2]    Plaintiff also sued Northgate Gonzalez, Inc.  We collectively refer to Northgate Gonzalez Markets, Inc. and Northgate Gonzalez, Inc. as "Northgate."

[3]    Specifically, plaintiff alleged claims for (1) discrimination on the basis of disability (namely, her injured hand), in violation of California's Fair Employment and Housing Act (Gov. Code, § 12940 et seq.) (FEHA), (2) harassment, in violation of FEHA, (3) retaliation for reporting her injury, in violation of FEHA, (4) failure to prevent discrimination, harassment and retaliation, in violation of FEHA, (5) failure to provide reasonable accommodation for her disability, in violation of FEHA, (6) failure to engage in good faith interactive process, in violation of FEHA, (7) wrongful termination in violation of public policy, (8) declaratory judgment, (9) negligent supervision and retention, (10) intentional infliction of emotional distress, and (11) retaliation for disclosing violations of law, in violation of Labor Code sections 1102.5 and 1102.6.

4

she sought compensatory damages, punitive damages, and attorney fees.

Defendants moved to compel arbitration under the 2015 Agreement and the 2018 Agreement.[4] After receiving additional briefing as well as a mountain of evidentiary objections and a last-minute supplemental declaration from Northgate, the trial court held a hearing on the motion. Following the hearing, the trial court denied the motion to compel. After excluding all of defendants' evidence authenticating plaintiff's electronic acknowledgment of the 2018 Agreement, the trial court ruled that the 2018 Agreement was not a "valid arbitration agreement." However, citing a passage from the declaration of a Northgate human resources employee that "[t]he 2018 . . . Agreement replaced all prior agreements regarding the arbitration of disputes," the trial court ruled that the 2018 Agreement was "the relevant arbitration agreement" and, on that basis, treated the 2015 Agreement as if it were a nullity.

Defendants filed a timely notice of appeal.

## DISCUSSION

Defendants appeal the trial court's order denying their motion to compel arbitration under the 2015 Agreement and the 2018 Agreement. We generally review such motions for an abuse of discretion, while reviewing any subsidiary legal questions de novo and any findings of fact based on disputed facts for substantial evidence. (*Gamboa v. Northeast Community Clinic* (2021) 72 Cal.App.5th 158, 166 (*Gamboa*).)

---

4 Plaintiff does not challenge her supervisor's ability to seek to compel arbitration, as both agreements apply also to claims against Northgate's "employees."

5

In denying the motion, the trial court relied on two rationales: (1) the 2018 Agreement cannot be the basis for arbitration because plaintiff never signed it, and (2) the 2015 Agreement cannot be the basis for arbitration because a human resources employee indicated that the 2018 Agreement was meant to "replace[]" the 2015 Agreement. As we explain below, the trial court's evidentiary rulings—which defendants largely do not attack on appeal—leave the record in a state that provides substantial evidence supporting the factual finding underlying its first rationale, but the court's second rationale is incorrect under settled principles of contract law, such that the 2015 Agreement remains enforceable. In the interest of judicial economy (and because the parties litigated or had the opportunity to litigate the question), we also decide that the 2015 Agreement is not unconscionable. (See *24 Hour Fitness, Inc. v. Superior Court* (1998) 66 Cal.App.4th 1199, 1212 (*24 Hour Fitness*) [appellate court may decide unconscionability issue, even if not decided by trial court].)

## I.    Governing Principles

"The validity of an arbitration agreement in California is determined by a . . . motion to compel arbitration." (*Juen v. Alain Pinel Realtors, Inc.* (2019) 32 Cal.App.5th 972, 977.) Such a motion "'is in essence a suit in equity to compel specific performance of a contract.'" (*Spear v. California State Auto. Assn.* (1992) 2 Cal.4th 1035, 1040.) Thus, the party seeking to compel arbitration has the "burden of proving the existence of an arbitration agreement." (*Pinnacle Museum Tower Assn. v. Pinnacle Market Development (US), LLC* (2012) 55 Cal.4th 223, 236 (*Pinnacle*).) In assessing whether a valid arbitration

6

agreement exists, courts look to "'[g]eneral principles of contract law.'" (*Ibid.*)

## II. Validity of the 2018 Agreement

As pertinent to this case, a party may manifest her consent to an arbitration agreement (1) expressly, by signing the agreement, or (2) implicitly, by continuing her employment while knowing of the agreement and that it is a condition of her continued employment. (*Pinncale, supra*, 55 Cal.4th at p. 236; *Schacter v. Citigroup, Inc.* (2009) 47 Cal.4th 610, 619-620 (*Schacter*); *DiGiacinto v. Ameriko-Omserve Corp.* (1997) 59 Cal.App.4th 629, 637 (*DiGiacinto*); *Craig v. Brown & Root, Inc.* (2000) 84 Cal.App.4th 416, 422 (*Craig*).)

The trial court's factual finding that plaintiff did not sign the 2018 Agreement is supported by substantial evidence. Although defendants presented evidence that plaintiff signed the 2018 Agreement using an electronic acknowledgment process, and although such evidence—if credited by the trial court—can support a finding of consent (e.g., *Tanis v. Southwest Airlines, Co.* (C.D. Cal., Mar. 11, 2019, No. 18-cv-2333-BAS-BGS) 2019 U.S. Dist. Lexis 38876, *11-*16; *Hose v. Washington Inventory Servs.* (C.D. Cal., Aug. 30, 2016, No. 14cv2869-WQH-WVG) 2016 U.S. Dist. Lexis 188368, *39-*42), the trial court here excluded defendants' evidence regarding plaintiff's electronic acknowledgment. With one exception, defendants do not challenge those evidentiary rulings on appeal. (*Toho-Towa Co., Ltd. v. Morgan Creek Productions, Inc.* (2013) 217 Cal.App.4th 1096, 1105 [when trial court excludes evidence and that ruling is not attacked on appeal, "it should go without saying that the excluded evidence . . . may not be used by th[e appellate] court to reverse the order of the trial court"].)

7

The only evidentiary ruling defendants challenge is the trial court's refusal to consider the "clearer" copy of the electronic print out of the computer record showing the time and date that plaintiff allegedly acknowledged the 2018 Agreement; defendants submitted this "clearer" copy on the day before the hearing on their motion and *after* the trial court issued its tentative ruling. The trial court ruled that this late-filed evidence was untimely, and that ruling was well within its discretion.  (*People v. Williams* (1997) 16 Cal.4th 153, 197 [trial court decision to admit or not admit evidence reviewed for abuse of discretion]; *In re Marriage of Hoffmeister* (1984) 161 Cal.App.3d 1163, 1171 [trial court has power to exclude evidence belatedly filed]; *Carbajal v. CWPSC, Inc.* (2016) 245 Cal.App.4th 227, 241 ["Whether to accept new evidence with the reply papers is vested in the trial court's sound discretion, and we may reverse the trial court's decision only for a clear abuse of that discretion."].)  Thus, the record is confined to plaintiff's denial of ever electronically acknowledging the 2018 Agreement, which certainly supports the trial court's finding that plaintiff did not consent to that agreement.

Even if we were to ignore the trial court's evidentiary rulings and consider defendants' evidence, that evidence at most creates a conflict in the evidence regarding whether plaintiff electronically signed the 2018 Agreement; such conflicting evidence is insufficient to carry defendants' burden, as the parties bearing the burden of proof below, that the evidence *compels* a finding in their favor *as a matter of law*.  (Accord, *Trinity v. Life Ins. Co. of North America* (2022) 78 Cal.App.5th 1111, 1123-1125 [during employer's appeal of order denying motion to compel arbitration, conflicting evidence regarding

validity of employee's electronic signature does not satisfy employer's burden of showing record "compel[s] a finding that [the employee] agreed to arbitrate her claims"]; *Bannister v. Marinidence Opco, LLC* (2021) 64 Cal.App.5th 541, 546-548 [same]; *Fabian v. Renovate America, Inc.* (2019) 42 Cal.App.5th 1062, 1067-1070 [same]; *Ruiz v. Moss Bros. Auto Group, Inc.* (2014) 232 Cal.App.4th 836, 842-846 [same]; *Smith v. Rent-A-Center, Inc.* (E.D. Cal., Mar. 21, 2019, No. 1:18-CV-01351LJOJLT) 2019 U.S. Dist. Lexis 47369, *11-*17 [same].)

Although the trial court did not rely on this rationale, defendants urge on appeal that plaintiff's continued employment with Northgate constitutes implied consent to the 2018 Agreement. Defendants are wrong. Consent is implied only if the evidence shows that the employee *knew* of the arbitration agreement and continued working anyway. (*Schacter*, *supra*, 47 Cal.4th at pp. 619-620; *DiGiacinto*, *supra*, 59 Cal.App.4th at p. 637; *Craig*, *supra*, 84 Cal.App.4th at p. 422.) As noted above, the record here does not compel a finding as a matter of law that plaintiff knew about the 2018 Agreement; thus, her continued employment does not implicitly amount to consent.

**III. Validity of the 2015 Agreement**

In light of defendants' evidence that plaintiff signed the 2015 Agreement, and plaintiff's failure to dispute that evidence, the trial court aptly noted that plaintiff does not "seem to dispute the existence of the 2015 . . . Agreement." Thus, the validity of the 2015 Agreement in this case turns on two questions: (1) Did Northgate's proposal that plaintiff sign the 2018 Agreement—even though it was rejected—extinguish the earlier contract between the parties, and (2) Is the 2015 Agreement otherwise

invalid because it is voidable under the general contract-law doctrine of unconscionability?[5]

## A. *Did the proposal of the 2018 Agreement extinguish the 2015 Agreement?*

The trial court found that the 2018 Agreement was not a valid contract between the parties, and we have concluded that that this finding is supported by substantial evidence. As a result, the 2018 Agreement was at most a modification of the 2015 Agreement that was *offered* by Northgate but never *accepted* by plaintiff. (Accord, *Northam v. Gordon* (1873) 46 Cal. 582, 588 ["no contract [is] created" when an "offer" is "not

---

[5] Plaintiff's counsel also argued in opposition to the motion to compel arbitration filed in the trial court that the 2015 Agreement was no longer valid because it expired when plaintiff was "re-employed" by Northgate. In response, Northgate clarified that plaintiff had been continuously employed from her date of hire in July 2015 until her date of termination in January 2019, and that the notation in her personnel records that she had been terminated on January 19, 2017, and "re-hired" five days later was a computer glitch. Indeed, Northgate submitted evidence that plaintiff had worked and had received compensation during the period of this glitch. Plaintiff did not object to that evidence, did not counter that evidence, and did not personally dispute in her declaration that she was continuously employed by Northgate. What is more, by failing to raise it at the hearing on the motion to compel arbitration and in the briefing on appeal, plaintiff's counsel abandoned the contention that plaintiff was terminated in January 2017. We accordingly reject plaintiff's counsel's attempt to revive this unsubstantiated contention for the first time at oral argument on appeal. (*People v. Crow* (1993) 6 Cal.4th 952, 960, fn. 7 [argument raised for first time at oral argument; waived]; *Kinney v. Vaccari* (1980) 27 Cal.3d 348, 356, fn. 6 [same].)

10

accepted"].)  Thus, the question becomes:  Did Northgate's unaccepted offer to modify the 2015 Agreement extinguish that agreement?

The trial court answered "yes," on the ground that Northgate's human resources employee stated, in her declaration in support of defendants' motion to compel arbitration, that "[t]he 2018 . . . Agreement replaced all prior agreements regarding the arbitration of disputes."  Plaintiff urges us to follow the same logic.  We decline to do so.  One party's subjective belief about the effect that a contract offer would have on prior contracts *had the offer been accepted* is wholly irrelevant where, as here, the offer was rejected.  (Accord, *Berman v. Bromberg* (1997) 56 Cal.App.4th 936, 948 ["'It is the objective intent, as evidenced by the words of the contract, rather than the subjective intent of one of the parties, that controls interpretation.'"]; *Harris v. TAP Worldwide, LLC* (2016) 248 Cal.App.4th 373, 381 ["'Mutual assent is determined under an objective standard'"].)  Thus, Northgate's statements about what the 2018 Agreement *would have done* did not somehow nullify the 2015 Agreement.

Nor did Northgate unilaterally rescind the 2015 Agreement.  A party *can* unilaterally rescind a prior agreement if (1) the party has reserved the power, in a prior agreement, to unilaterally modify the agreement and exercises that power to extinguish the prior agreement (e.g., *Martinez v. Scott Specialty Gases, Inc.* (2000) 83 Cal.App.4th 1236, 1246), or (2) the party follows the statutory procedures for unilateral rescission, which require that (a) the rescission be based on a statutorily enumerated reason (Civ. Code, § 1689, subd. (b)), and (b) the rescinding party give the other party notice and also offer to restore all benefits it received by virtue of the rescinded contract

11

to the other party (Civ. Code, § 1691; *Southern Ins. Co. v. Workers' Comp. Appeals Bd.* (2017) 11 Cal.App.5th 961, 971; *Little v. Pullman* (2013) 219 Cal.App.4th 558, 569; *Medina v. Safe-Guard Products, Internat., Inc.* (2008) 164 Cal.App.4th 105, 112, fn. 8).  The 2015 Agreement did not grant Northgate the power to unilaterally modify the agreement.  Nor did Northgate satisfy the requirements to effect a unilateral rescission because there is no showing of a statutorily enumerated basis for rescission (namely, and under Civil Code section 1689, that the agreement to be rescinded was agreed to by virtue of mistake, duress, menace, fraud or undue influence in consenting to the contract; that it lacked consideration or there was a failure of consideration; that it was unlawful; or that it is against the public interest), no notice of rescission, and no offer to restore benefits to plaintiff.

Northgate argues that the 2018 Agreement effected a novation.  This argument ignores that a novation occurs when a new *contract* is designed to extinguish a prior contract.  (Civ. Code, § 1532 ["Novation is made by contract . . . ."]; *Alexander v. Angel* (1951) 37 Cal.2d 856, 860, 863 [novation requires a "new agreement"]; *Wells Fargo Bank v. Bank of America* (1995) 32 Cal.App.4th 424, 431 [novation is "the substitution . . . by agreement and with the intent to extinguish the prior obligation"]; accord, Civ. Code, § 1531 [further defining novation].)  Here, there was at most an offer to create a new contract, but no new contract was formed.  Thus, the doctrine of novation is irrelevant.

Consequently, the 2015 Agreement remains intact.

12

**B.** *Is the 2015 Agreement unconscionable?*

Even though the 2015 Agreement has not been superseded, plaintiff argued below that it nevertheless did not provide a basis to compel arbitration because it is unconscionable.

Like any other contract, an agreement to arbitrate is invalid if it is unconscionable. (*OTO, L.L.C. v. Kho* (2019) 8 Cal.5th 111, 125 (*OTO*); 9 U.S.C. § 2; Code Civ. Proc., § 1281; Civ. Code, § 1670.5, subd. (a).) A party seeking to invalidate an agreement to arbitrate as unconscionable bears the burden of proving its unconscionability. (*Pinnacle*, *supra*, 55 Cal.4th at p. 236.) A contract is unconscionable if there is "'""an absence of meaningful choice on the part of one of the parties together with contract terms which are unreasonably favorable to the other party."'"" (*Baltazar v. Forever 21, Inc.* (2016) 62 Cal.4th 1237, 1243 (*Baltazar*).) Consequently, the doctrine of unconscionability requires proof of *both* procedural unconscionability and substantive unconscionability; the more of one that exists, the less of the other that must exist for a contract to be declared invalid due to unconscionability. (*Id.* at pp. 1243-1244.) Procedural unconscionability is assessed along a "'spectrum'": At one end are "'contracts that have been freely negotiated'"; at the other are "'[c]ontracts of adhesion that involve surprise or other sharp practices.'" (*Id.* at p. 1244.) Substantive unconscionability exists when a contract's terms are themselves "'"overly harsh"'" or "'"so one-sided as to "shock the conscience."'"" (*Ibid.*) We independently review a finding regarding whether an agreement is unconscionable where, as here, the pertinent facts are undisputed. (*Serpa v. California Surety Investigations, Inc.* (2013) 215 Cal.App.4th 695, 702 (*Serpa*).)

13

The 2015 Agreement has a "low" degree of procedural unconscionability. Here, plaintiff proffered two reasons for why the 2015 Agreement is procedurally unconscionable: (1) it is a contract of adhesion, and (2) plaintiff would not have signed it had she been informed of the rights she was giving up. Together, these reasons amount to no more than a low degree of procedural unconscionability. First, adhesive arbitration agreements are "typical[]" in the employment context (*OTO*, *supra*, 8 Cal.5th at p. 126) and thus have little impact on the unconscionability analysis unless there is proof that the employee was "lied to, placed under duress, or otherwise manipulated into signing the arbitration agreement." (*Baltazar*, *supra*, 62 Cal.4th at p. 1245; *Serpa*, *supra*, 215 Cal.App.4th at p. 704.) Plaintiff made no showing of deception or duress. Second, plaintiff's buyer's remorse after consenting to the 2015 Agreement provides no basis to invalidate the contract. (*Madden v. Kaiser Foundation Hospitals* (1976) 17 Cal.3d 699, 710 ["the general rule [is] that one who assents to a contract is bound by its provisions and cannot complain of unfamiliarity with the language of the instrument"]; cf. *McCarn v. Pacific Bell Directory* (1992) 3 Cal.App.4th 173, 183 [failure to read provision because felt hurried relevant to "surprise" element of a claim of unconscionability].)

Because the 2015 Agreement comes with a relatively low degree of procedural unconscionability, the agreement is unconscionable only if it has a high degree of substantive unconscionability due to overly harsh and one-sided terms. (*Dotson v. Amgen, Inc.* (2010) 181 Cal.App.4th 975, 982.) The terms of this agreement do not meet this threshold. The agreement binds both Northgate and the signatory employee to arbitrate all of their claims; grants both sides equal rights to

14

discovery, a fair hearing, and a written award; and does not limit their remedies. Such terms are not substantively unconscionable. (E.g., *Peng v. First Republic Bank* (2013) 219 Cal.App.4th 1462, 1472-1473 [both parties' claims subject to arbitration; not unfair]; *24 Hour Fitness, supra*, 66 Cal.App.4th at p. 1213 [equal rights to discovery and open remedies; not unfair].)

Plaintiff argued that the 2015 Agreement is substantively unconscionable because (1) it does not use the word "neutral" to describe the mutually agreed upon arbitrator; and (2) it does not provide for the same scope of discovery as in a trial court forum. These arguments are frivolous. First, it is clear that the 2015 Agreement imposes a requirement of neutrality without ever using the word "neutral" because the arbitrator must "be a retired Judge" or other "qualified individual" agreed to by the parties and "subject to disqualification" based on Code of Civil Procedure section 170 et seq. Section 170.1 of the Code of Civil Procedure specifically requires the disqualification of a judge who is not neutral. Second, it is well settled that adequate discovery in arbitration does not mean unfettered discovery (*Fitz v. NCR Corp.* (2004) 118 Cal.App.4th 702, 715; *Mercuro v. Superior Court* (2002) 96 Cal.App.4th 167, 184) and that the parties may agree to something less than the full panoply of discovery in California's Civil Discovery Act (*Armendariz v. Foundation Health Psychare Services, Inc.* (2000) 24 Cal.4th 83, 104-106). Indeed, "[l]imited discovery rights are the hallmark of arbitration" (*Coast Plaza Doctors Hospital v. Blue Cross of California* (2000) 83 Cal.App.4th 677, 690), and the sine qua non of arbitration's "promise of quicker, more informal, and often cheaper [dispute]

15

resolutions for everyone involved" (*Epic Systems Corp. v. Lewis* (2018) 138 S.Ct. 1612, 1621).

## DISPOSITION

We reverse the order denying defendants' motion to compel and direct the trial court to enter a new and different order compelling arbitration pursuant to the 2015 Agreement and staying the litigation.  The parties are to bear their own costs on appeal.

<u>NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS</u>.


_____, J.

HOFFSTADT


We concur:


_____, P. J.

LUI


_____, J.

ASHMANN-GERST

16