**TRANSURFACE CARRIERS, INC.,**
**Plaintiff, Appellant,**

v.

**FORD MOTOR COMPANY, et al.,**
**Defendants, Appellees.**

**No. 83–1903.**

United States Court of Appeals,
First Circuit.

Argued April 4, 1984.

Decided July 3, 1984.

Alice M. Vogler, Boston, Mass., with whom Carolyn R. Jurist, Boston, Mass., and Wasserman, Salter & Rome, Boston, Mass., were on brief, for appellant.

Paul M. Stein, Boston, Mass., with whom Choate, Hall & Stewart, Boston, Mass., was on brief, for appellees Ford Motor Co. and Bi-State Ford Sales, Inc.

Mary Ellen McAndrews, Boston, Mass., with whom Richard P. Campbell, and Campbell & Associates, P.C., Boston, Mass., were on brief, for appellee General Motors Corp.

Before CAMPBELL, Chief Judge, BOWNES, Circuit Judge, and HUNTER,[*] Senior District Judge.

LEVIN H. CAMPBELL, Chief Judge.

Transurface Carriers, Inc. ("Transurface"), brought this action against Ford Motor Company ("Ford"), Bi-State Ford Truck Sales, Inc. ("Bi-State"), and Detroit Diesel Allison, a division of General Motors Corporation ("General Motors"), in the United States District Court for the District of Massachusetts for breach of express and implied warranties allegedly given in connection with the sale of a 1979 Ford truck (actually the tractor unit). Ac-

---

[*] Of the Western District of Missouri, sitting by designation.

cording to the complaint, Transurface purchased the truck through Bi-State on January 29, 1980, at which time Bi-State supposedly made certain oral warranties on behalf of Ford and General Motors (the manufacturer of the engine) over and above their usual written warranties. Transurface alleged that the truck thereafter experienced numerous mechanical failures including improper alignment and suspension, fuel and oil leaks, a cracked bell housing, faulty heating and air conditioning, and engine problems. Transurface further alleged that it had been forced to drive the ailing vehicle almost 200,000 miles before it was able to obtain instructions to leave the truck at a certain Ford dealership for repairs. Jurisdiction was based on diversity of citizenship. 28 U.S.C. § 1332. The district court granted summary judgment against Transurface. In this appeal, Transurface contends that the district court improperly granted summary judgment.

## I. THE CLAIMS AGAINST FORD AND BI-STATE

### A. The Applicable Warranties

Ford and Bi-State contend that a certain document signed by a Transurface agent when he picked up the truck defines the limits of the warranties given. Transurface contends that it never received this document, that the agent who signed the document had no authority to bind Transurface to a limitation of warranties, and that Ford and Bi-State should be held to the alleged oral warranties made by a Bi-State salesman.

It appears from the record that Ronald L. Schlegelmilch,[1] an independent contractor, picked up the Ford truck from Bi-State in Ohio on January 28, 1980. He signed a "Vehicle Delivery Receipt" as "agent" for Transurface and for Wornat Leasing Corp. Wornat is the nominal owner of the truck and Transurface the lessee; Wornat is not a party to this suit.

Ronald also signed a boilerplate order form, hereinafter the "Order," although he did not write "agent" after his signature. A disclaimer of warranties appears in small print in the center of the front of the Order and reads as follows:

DISCLAIMER OF WARRANTIES: Any warranty on the products sold hereby are those made by the manufacturer. The seller, Bi-State Ford Truck Sales, Inc., hereby expressly disclaims all warranties, either express or implied, including any implied warranty of merchantability or fitness for a particular purpose, and Bi-State Ford Truck Sales, Inc. neither assumes nor authorizes any other person to assume for it any liability in connection with the sale of the vehicle or sold products.

Directly above the signature line of the Order the following language appears in somewhat larger red print:

The front and back of this Order comprise the entire agreement affecting this purchase and no other agreement or understanding of any nature concerning same has been made or entered into, or will be recognized. I have read the matter printed on the back hereof and agree to it as a part of this order the same as if it were printed above my signature. I certify that I am of majority age and hereby acknowledge receipt of a copy of this order.

The above quoted language refers to the back of the Order which contains in boldface print the following description of the applicable warranties:

There is no other express warranty on this vehicle. Any implied warranty of merchantability or fitness is limited to the 12 month/12,000 mile duration of this written warranty.

1. As to a new vehicle or chassis, the most recent printed Ford Motor Company warranty applicable to such new vehicle or chassis, which is made a part of this Order as if set forth in full. Such printed warranty has been ex-

---

**1.** The parties do not spell "Schlegelmilch" consistently. Other spellings include "Schlegi lmilch" and "Schlezelmilch." For simplicity, we shall refer to the agent as "Ronald."

plained to the Purchaser and a copy thereof will be furnished to the purchaser upon delivery of the vehicle or chassis....

Despite the language appearing in the Order directly above the signature which says that a copy of the Order has been received and that the back of the document has been read, Transurface maintains that it never received a copy of the Order or the warranty booklet referred to therein. Transurface also argues that Ronald did not have authority to sign away or limit various oral warranties that a Bi-State salesman allegedly made to Transurface, or implied warranties, even though it concedes that Ronald was its agent for purposes of picking up the truck in Ohio.

We agree with Ford and Bi-State that the warranties relevant to this transaction are those contained in the Order and the warranty booklet.

Apart from whether Ronald had authority to agree to the warranties contained in the Order, we think it clear that his agency to pick up the truck encompassed the authority to receive documents incidental to taking possession of the truck and deliver them to Transurface. The Order and the warranty booklet are such documents. The law of principal and agent is clear that conferring authority to conduct a transaction gives authority to undertake acts incidental to the transaction. *See, e.g., Selame Associates, Inc. v. Holiday Inns, Inc.,* 451 F.Supp. 412 (D.Mass.1978); *DeVaux v. American Home Assurance Co.,* 387 Mass. 814, 444 N.E.2d 355 (1983); *MacDonald v. Gough,* 326 Mass. 93, 93 N.E.2d 260 (1950). Transurface claims that it never received these documents; nevertheless, Ronald, its agent, signed his name immediately below clear language which says that he has received a copy of the Order *and* read the back of it. The back of the Order clearly mentions a printed Ford Motor Company warranty and states that a copy will be furnished upon delivery.

In the circumstances, where Transurface's agent represented that he had received the documents, Transurface is chargeable with their receipt. Receipt by an agent is considered receipt by his principal. *Cf. Levin v. Berley,* 728 F.2d 551, 553 (1st Cir.1984) (knowledge of agent imputed to principal) (collecting cases).

The harder question is whether the district court could properly determine that Ronald's agency included authority to agree to warranties on behalf of Transurface, or perhaps, modify those allegedly agreed to over the telephone by Bi-State. The district court had before it the following materials: a receipt for the vehicle signed by Ronald in which he purports to be an "agent" for Transurface; the Order which bears his signature; and a Transurface answer to a Ford interrogatory. The interrogatory reads in relevant part as follows: "3Q. Please describe the transaction surrounding the purchase of each Vehicle by stating (a) the person or persons who acted on your behalf...." The answer was "Nicholas J. Naples and Ronald Schlegelmilch." The district court docket sheet reveals that no depositions were placed into the record before it, although several notices of depositions were part of the record below. None of the excerpts from depositions attached to memoranda in support of motions in opposition to summary judgment deal with the scope of Ronald's authority.

The party moving for summary judgment assumes the burden of affirmatively demonstrating that there is no genuine issue of triable fact, *see, e.g., Adickes v. Kress & Co.,* 398 U.S. 144, 157, 90 S.Ct. 1598, 1608, 26 L.Ed.2d 142 (1970); *Mack v. Cape Elizabeth School Board,* 553 F.2d 720, 722 (1st Cir.1977); *Ramsay v. Cooper,* 553 F.2d 237, 240–41 (1st Cir.1977); *Bromley-Heath Modernization Committee v. Boston Housing Authority,* 459 F.2d 1067, 1071 (1st Cir.1972), and "if he does not discharge that burden then he is not entitled to judgment. No defense to an insufficient showing is required." 6 J. Moore, *Moore's Federal Practice* ¶ 56.22[2] (2d ed. 1982). We think that the above mentioned materials, absent any contrary facts, were

a sufficient basis for the court's conclusion that Transurface was bound by Ronald's agreement. As the district court pointed out, at the very least Ronald had apparent authority to sign the Order. Signing those papers that are usual and necessary to taking possession of a truck are clearly within the apparent authority of one sent to pick up a vehicle.

■■■ To be sure, in plaintiff's memorandum in support of its motion in opposition to Ford and Bi-State's motion for summary judgment counsel for Transurface argued as follows:

Although the signature of Ronald L. Schlegilmilch appears on the abovementioned purchase agreement, it must be noted that Mr. Schlegilmilch was an independent contractor who was authorized by Transurface only to take delivery of the truck. The fact that the actions of Mr. Schlegilmilch in taking delivery of the truck and in signing the document may operate to bind the Plaintiff is material and very much in dispute. Transurface must be afforded the opportunity to establish that its independent contractor had no authority to bind it to a blanket disclaimer of all warranties.

This, however, was no more than argument. It was not supported by affidavits, deposition, or other appropriate materials, *see* Fed.R.Civ.P. 56(e), raising a question of fact as to the scope of Ronald's authority. Mere assertions of counsel made in a legal memorandum are insufficient to establish the existence of a genuine issue of material fact. *See S.A. Empressa de Viaco Aerea Rio Grandense (Varig Airlines) v. Walter Kidde & Company,* 690 F.2d 1235, 1238 (9th Cir.1982); *White v. Hearst Corp.,* 669 F.2d 14, 18 (1st Cir.1982); *British Airways Board v. Boeing Company,* 585 F.2d 946 (9th Cir.1978), *cert. denied,* 440 U.S. 981, 99 S.Ct. 1790, 60 L.Ed.2d 241 (1979); *cf. Lacey v. Lumber Mutual Fire Insurance Company,* 554 F.2d 1204 (1st Cir.1977) (non-legal memorandum from non-moving party insufficient). Counsel for Transurface may believe they have evidence casting genuine doubt on Ronald's authority to

agree to warranties, but, if so, this should have been put before the court in the manner contemplated by Rule 56(e). We think the materials before the court were sufficient to create the inference that Ronald had sufficient authority as Transurface's agent to bind it. The district court properly concluded on the unrebutted evidence before it that "Plaintiff is bound by the acts of its agent." Thus, we conclude that the warranties bearing on this case are those contained in the Order and the Ford warranty booklet.

**B. Potential Liability of Bi-State and Ford**

■■■ Since we hold that the applicable warranties are those contained in the Order and in the warranty booklet, we affirm the entry of summary judgment in favor of Bi-State. The Order expressly states that all warranties given were those of the manufacturer and that Bi-State gave *no* warranties. Such a disclaimer is effective as to the sale of commercial goods such as the truck at issue here. *See* Mass.Gen.Laws ch. 106, § 2–316. Transurface argues that the language of this disclaimer was not conspicuous because it did not receive a copy of the Order and because the print of the disclaimer is small. The first argument fails because, as already explained, Transurface must be charged with having received a copy of the Order. The second argument also fails. While the print is not large, the disclaimer appears on the front of the document and the lead clause, "DISCLAIMER OF WARRANTIES," is printed in larger type with all capital letters. *See* Mass.Gen.Laws ch. 106, § 1–201(10).

■■■ As we hold that the applicable warranties are those contained in the Order and the warranty booklet, summary judgment in Ford's favor was also properly granted with respect to the claims against Ford based on the oral warranties allegedly made by Bi-State's salesman. In the Order and the warranty booklet, Ford expressly warranted the vehicle for the lesser of 12 months or 12,000 miles. Thereafter, up until 100,000 miles Ford agreed to pay a percentage of parts and labor, calculated

on a sliding scale. From the deposition excerpts it appears that warranty work was performed for Transurface on a pro rata basis. Transurface does not appear to have pressed any claim before the district court based specifically on a purported failure by Ford to honor its own written warranty (as opposed to Ford's alleged failure to honor the more expansive warranty supposedly communicated by Bi-State's salesman). In the absence of an identifiable claim based on the Ford warranty, the district court properly granted summary judgment in favor of Ford. In so holding we have viewed the record and drawn inferences in the light most favorable to Transurface. *See, e.g., Astra Pharmaceutical Products, Inc. v. Beckman Instruments, Inc.,* 718 F.2d 1201, 1204 (1st Cir.1983); *Hahn v. Sargent,* 523 F.2d 461, 464 (1st Cir.1975), *cert. denied,* 425 U.S. 904, 96 S.Ct. 1495, 47 L.Ed.2d 754 (1976).

## II. THE CLAIMS AGAINST GENERAL MOTORS

### A. The Applicable Warranties

Transurface argues that General Motors should be held to the oral representations supposedly made by the Bi-State salesman. Its theory is that the salesman should be considered the agent for General Motors. General Motors denies that the salesman was its agent. We agree with General Motors and the district court that Bi-State and its salesman cannot be considered General Motors's agent.

■ The act of supplying Ford with engines to install in certain models of Ford trucks was not sufficient to demonstrate an agency relationship between General Motors and the salesman of an independent Ford dealership. Absent from this "supplier" relationship is any "conduct of the principal [General Motors] which, reasonably interpreted, causes a third person to believe that the principal consents to have the act done on his behalf by the person purporting to act for him." *Weisman v. Saetz,* 11 Mass.App. 440, 416 N.E.2d 1007, 1009 (1981). It cannot be argued that the salesman had apparent authority to make

representations on behalf of General Motors because General Motors took no action suggesting to Transurface, or indeed anyone else, that Bi-State was authorized to act on its behalf. *See Sheldon v. First Federal Savings & Loan Association,* 566 F.2d 805, 808 (1st Cir.1977); *Hudson v. Massachusetts Property Insurance Underwriting Association,* 386 Mass. 450, 436 N.E.2d 155 (1982).

■ Our view is strengthened by the fact that the Ford warranty booklet expressly states in two places that engines manufactured by Detroit Diesel Allison are separately warranted by the manufacturer and not Ford.

> Full details of the applicable warranty coverage on these diesel engines ... are set forth in the engine ... manufacturer's service policy or operator's engine ... manual. If it is not in the vehicle when you receive it, you may obtain a copy at your Diesel or Allison transmission service center.

We hold that the warranties applicable to the truck's engine, if any, are those contained in the applicable General Motors written warranty and referred to in the Ford warranty booklet.

### B. Potential Liability of General Motors

■ Since the applicable warranty is the written General Motors warranty, we affirm the grant of summary judgment in favor of General Motors with respect to Transurface's claim under the alleged oral warranty. As it does not appear that Transurface presented an identifiable claim to the district court based on alleged breach of the GM warranty, as distinct from its claim under the purported oral warranty, summary judgment was appropriate in toto.

*Affirmed.*