**Laurence B. GREENBURG, etc., et al., Plaintiffs, Appellants,**

v.

**PUERTO RICO MARITIME SHIPPING AUTHORITY, etc., et al., Defendants, Appellees.**

No. 87–1330.

United States Court of Appeals, First Circuit.

Heard Nov. 4, 1987.
Decided Dec. 23, 1987.

---

Joseph C. Delcore with whom Delcore & Delcore, Everett, Mass., was on brief, for appellants.

Steven C. Lausell, with whom Jimenez, Graffam & Lausell, San Juan, P.R., was on brief, for appellees.

Before COFFIN, BOWNES and SELYA, Circuit Judges.

SELYA, Circuit Judge.

Laurence B. Greenburg, plaintiff-appellant, is a food wholesaler who does business under the name and style of "Ampex Meats." Greenburg wanted to ship an order to a customer in Puerto Rico. To implement this desire, he entered into a contract to transport the comestibles from Port Elizabeth, New Jersey to San Juan, Puerto Rico aboard the S.S. Fortaleza, a vessel owned, managed, and operated by the defendants-appellees, Puerto Rico Maritime Shipping Authority and Puerto Rico Marine Management, Inc. The shipment was to proceed pursuant to bill of lading and to the terms and provisions of the Carriage of Goods by Sea Act (COGSA), 46 U.S.C. §§ 1300–1315.

The mechanics of the transaction were relatively straightforward. At Ampex's warehouse in Massachusetts, plaintiff stacked 1174 packages of meats and foodstuffs into a sealed container (sometimes called a "reefer") provided by defendants.[1] The latter arranged to take the container to the docks in Port Elizabeth and load it aboard the Fortaleza. All of this was accomplished on April 11 and 12, 1984.

Greenburg was given a "clean" bill of lading, i.e., one which contained stock recitals attesting to the apparent good order and condition of the wares. The bill of lading contained a special stipulation to the effect that the merchandise was to be kept at a temperature of zero degrees.[2] Although the Fortaleza put into port at San Juan on April 15, the consignee did not take possession of the shipment until ten

---

**1.** The total cache weighed some 46,000 pounds and had a value claimed to be in excess of $85,000. It included well over 200 different items, as widely divergent as sour cream dressing, ribeye steaks, and breakfast sausages.

**2.** All temperature references contained herein are set forth in degrees Fahrenheit.

days later. During this span, the refrigerated reefer remained in defendants' control, in their "Reefer Yard." When uncrated by the consignee, the cargo was susceptible to description in much the same language which John Randolph once used to describe a political nemesis, Edward Livingston: it shone and stunk like rotten mackerel in the moonlight. The food was, by and large, inedible and unsalable.

Greenburg sued, claiming that the goods had been spoiled in transit and that the shipowners should respond in damages. After some nineteen months of discovery, the defendants moved for summary judgment, Fed.R.Civ.P. 56, supporting their motion with numerous exhibits (sworn statements, deposition transcripts, and the like). Plaintiff's opposition included similar, but less copious, paperwork. And the defendants, eager to have the last word, filed a reply which brought further materials before the court. Eventually, the district judge granted *brevis* disposition in defendants' favor. *Greenburg v. Puerto Rico Maritime Shipping Authority*, Civ. No. 84–2748 GG, slip op. (D.P.R. Feb. 27, 1987) (unpublished). The court held that "plaintiff failed to establish that the merchandise was in actual good order and condition at the time of shipment," *id.* at 6, thereby defeating his claim for damages. Finding the ruling to be unpalatable, Greenburg appealed.

In passing upon a Rule 56 motion, the district court must make a threshold determination of "whether there is a need for a trial—whether, in other words, there are any genuine factual issues that properly can be resolved only by a finder of fact because they may reasonably be resolved in favor of either party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 106 S.Ct. 2505, 2511, 91 L.Ed.2d 202 (1986). In conducting this tamisage, it is apodictic that the district court must eye all reasonable inferences in the light most congenial to the nonmovant. *United States v. Diebold, Inc.*, 369 U.S. 654, 655, 82 S.Ct. 993, 994, 8 L.Ed.2d 176 (1962) (per curiam); *Poller v. Columbia Broadcasting System, Inc.*, 368 U.S. 464, 473, 82 S.Ct. 486, 491, 7 L.Ed.2d 458 (1962). We can reverse a grant of summary judgment only if we find that "issues of fact which were adequately raised before the district court need to be resolved before the legal issues in the case may be decided." *Emery v. Merrimack Valley Wood Products, Inc.*, 701 F.2d 985, 986 (1st Cir.1983). In fine, Fed.R.Civ.P. 56 requires that we, as the reviewing tribunal, be "fully satisfied that there is no genuine dispute as to any relevant fact issue and that the appellee is, as a matter of law, due the relief which the district court awarded." *Advance Financial Corp. v. Isla Rica Sales, Inc.*, 747 F.2d 21, 26 (1st Cir. 1984); *see also Matsushita Electric Industrial Co. v. Zenith Radio Corp.*, 475 U.S. 574, 106 S.Ct. 1348, 1355–56, 89 L.Ed.2d 538 (1986). Notwithstanding that recent caselaw has invited greater use of Rule 56, the test remains a fairly rigorous one.

■ We pause before beginning our canvass of the evidentiary fragments contained in the depositions, affidavits, supporting documents, and the like which comprise the present record. We believe it to be helpful first to set out an overview of the substantive law implicated by the pleadings. Plaintiff's case is based, at bottom, on defendants' supposed breach of the duties imposed by § 1303(1)(c) and (2) of COGSA: the carrier's obligations to exercise "due diligence" to make the refrigerating chambers which it used "fit and safe" for the carriage and preservation of the goods, and to "properly and carefully load, handle, stow, carry, keep, care for, and discharge the goods." *Id.* To prove such dereliction, Greenburg would ordinarily be expected to show delivery of the merchandise to the carrier in good order and condition. *Vana Trading Co. v. S.S. "Mette Skou"*, 556 F.2d 100, 104 (2d Cir.), *cert. denied*, 434 U.S. 892, 98 S.Ct. 267, 54 L.Ed. 2d 177 (1977). The absence of exceptions in the bill of lading, without more, will not do the trick in a situation like this one. "[A] clean bill of lading merely attests to apparent good condition of cargo, based on external inspection." *United States v. Lykes Bros. S.S. Co.*, 511 F.2d 218, 223 (5th Cir.1975). In circumstances where, as here, the actual condition of perishable

commodities cannot adequately be gauged by the external appearance of the outer packaging, the shipper must produce some other (credible) evidence to show that the contents were up to snuff when loaded. *Caemint Food, Inc. v. Brasileiro*, 647 F.2d 347, 353–54 (2d Cir.1981); *Compagnie de Navigation Fraissinet & Cyprien Fabre, S.A. v. Mondial United Corp.*, 316 F.2d 163, 169–70 (5th Cir.1963). The court below ruled that plaintiff had failed in this task. We demur.

▪ Having reviewed the entire record with painstaking care, we find enough in the way of factbound controversy to forestall summary adjudication. Inasmuch as we believe that plaintiff is entitled to a plenary trial on the merits—a trial which will determine, once and for all, the conflicting allegations of the parties—we will refrain from any detailed exposition of the evidentiary proffers which were before the district court. It suffices for today to note that, on the key issue in the case—the condition of the merchandise when delivered to the defendants—there was strong evidence tending to indicate that the goods were a motley lot, carelessly assembled, stowed in a haphazard manner, and suspect from the start. But *strong* evidence and *undisputed* evidence are two different, if related, breeds of cat. There was also evidence before the court which, if construed favorably to the plaintiff, could support the opposite conclusion. We serve up a few illustrative morsels:

1. Greenburg testified (by deposition) that Ampex maintained a quality control system designed to insure that product was received in tip-top condition. He claimed that he spot-checked items personally upon arrival, and rejected them if not up to par. As to this specific shipment, Greenburg swore that he had spotchecked it and that *everything* was frozen when placed into the reefer. He described the condition of the sour cream dressing in particular.

2. Russell Skidds, employed in Ampex's shipping department in 1984, gave both a deposition and a sworn statement. He avouched that all of the product, except for approximately six small cartons, was recently purchased. (The company's bookkeeper said the same.) Skidds testified that the merchandise had been received within ten days prior to shipping it, that "it went into our freezer and never moved so that when we took it out [to pack] I knew it was in good shape."[3] According to the witness, the goods, frozen, were loaded immediately into the reefer, a process which took about "a couple of hours." Skidds personally sealed the container and told defendants' driver that it had to be set at zero degrees or below.

3. It is settled that a consignor may prove the original condition of the cargo either by direct evidence or by showing that the deterioration was likely caused by the carrier's want of care. *See Elia Salzman Tobacco Co. v. S.S. Mormacwind*, 371 F.2d 537, 539 (2d Cir.1967). In this instance, there was evidence before the district court that the in-transit refrigeration malfunctioned. The bill of lading required a constant zero temperature. Yet the documents reflected that, while the reefer was in appellees' charge, the temperature reached as high as seventeen degrees. Indeed, the Reefer Yard Temperature Reports revealed that the temperature fluctuated over a ten day period (April 15 to April 24) from five degrees below zero to a high of seventeen degrees. On some days (*e.g.*, April 17), there were no readings as low as zero. When the cargo was inspected on April 25, the top layers of the shipment were frozen solid but the center of the load was thawing and bleeding. The sour cream dressing, for example, bore temperatures ranging from fifteen to twenty-five degrees, and assorted meats bore pulp temperatures ranging from two to thirty degrees.

To be sure, viewed in the totality of the record, this evidence may seem rather frail. Skidds' testimony contained some flagrant contradictions. Plaintiff's packaging ap-

---

**3.** According to Skidds, Ampex's freezer was checked every morning. There were no problems with it.

peared dilapidated and suggested that, when placed in the reefer, some of the goods were less than top rank. The documentary evidence indicated that parts of the load may have been old. A chemist, Villela, performed "organoleptic evaluations" at the defendants' behest. In his opinion, the results of these studies indicated that the shipment "was not fit for human consumption at its point of origin". United States Department of Agriculture (USDA) inspectors discovered various out-of-date items.[4] One said that he noticed no sign of reefer malfunction. The appellees' refrigeration supervisor determined on April 25 that the unit was in "perfect working condition and set at zero as required." Appellees' surveyor supplied similar evidence. At various times and in various ways, the defrosting of the foodstuffs was attributed to age and/or improper packing on Greenburg's part by an impressive cast of characters: the USDA inspectors, a bureaucrat working for a Puerto Rico government agency, the surveyor, defendants' superintendent. And when discovered, the upper layers of the cargo were frozen—but not the portions in the center (which were collapsed).[5]

■ Be that as it may, the decisive criterion on a summary judgment motion is not a comparative one. Fed.R.Civ.P. 56 does not ask which party's evidence is more plentiful, or better credentialled, or stronger. Rather, the rule contemplates an abecedarian, almost one dimensional, exercise geared to determining whether the nonmovant's most favorable evidence and the most flattering inferences which can reasonably be drawn therefrom are sufficient to create any authentic question of material fact. Among other things, apart from that which may be inherently incredible, the nonmoving party is entitled "to have the credibility of his evidence as forecast assumed, his version of all that is in dispute accepted, [and] all internal conflicts in [the evidence] resolved favorably to him...." *Charbonnages de France v. Smith*, 597 F.2d 406, 414 (4th Cir.1979). The precincts patrolled by Rule 56 admit of no room for credibility determinations, no room for the measured weighing of conflicting evidence such as the trial process entails, no room for the judge to superimpose his own ideas of probability and likelihood (no matter how reasonable those ideas may be) upon the carapace of the cold record. Although the evidence manifesting the factual dispute needs to be "substantial" in the sense that it looms as "sufficient ... to require a [factfinder] to resolve the parties' differing versions of the truth at trial", *Hahn v. Sargent*, 523 F.2d 461, 464 (1st Cir.1975) (citations omitted), *cert. denied*, 425 U.S. 904, 96 S.Ct. 1495, 47 L.Ed.2d 754 (1976), it need not be clearly preponderant.

In this case, the collective proffers raise bona fide questions as to whether some, perhaps all, of the nutriments were in acceptable condition when entrusted to the ministrations of the defendants; and if so, whether the ensuing despoliation was attributable to improper stowage on plaintiff's part or to faulty handling by the carrier. That the answers to these questions seem relatively obvious to some is beside the point. While Greenburg's proof may appear weak in comparison to the mass of evidence marshalled by the appellees, there is enough in the record to

---

4. It is important, we think, that both Villela and the USDA agents did only representative sampling. Even if Villela's tests were accurate, they applied directly to but a fraction of the shipment. Even if the inspectors' observations were credited, those observations pertained to only a fraction of the load. Though such evidence would likely be inferentially probative as to all of the goods at trial, the findings must be accorded more limited significance at the summary judgment stage (where, as we have said, all reasonable inferences need perforce be drawn in appellant's favor).

5. While this could suggest, as appellees asseverate, that the refrigerated container was working well and that improper stowage prevented cold air from maintaining the temperature of the product stacked in the center, it seems equally plausible that it could, as suggested by plaintiff, connote that the merchandise was properly stowed, that it defrosted from the outside first due to excessive temperatures (a theory which would account for the "collapsing" in the middle), and that, when the reefer was opened, the merchandise was in the process of being refrozen.

present some "substantial" grounds for disagreement within the *Hahn* rule. In this case, on balance, it is clear that the ultimate arbiter of the persuasiveness of the proof must be the factfinder, not the lawgiver. We are, after all, operating under the aegis of Rule 56. The facts before us admit of more than one plausible inference as to how something came to be rotten in San Juan. And though the seeds of doubt have been planted throughout the record, strategically and in abundance, "doubt, no matter how wellfounded or how deeply rooted, does not, in the absence of omniscience, rise to the level of certainty." *Linder v. Berge*, 577 F.Supp. 279, 282 (D.R.I.1983), *aff'd*, 739 F.2d 686 (1st Cir.1984).

We need go no further.[6] There is enough of a patina of uncertainty here as to the material facts to deflect the summary judgment axe. Accordingly, the decision and order granting judgment to defendants must be vacated and the case remanded for trial on the merits.

*Vacated and remanded.*

---

**6.** When answering the suit, appellees counterclaimed to recover freight charges due and owing. The district court granted summary judgment in their favor on the counterclaim for a sum certain. *Greenburg v. Puerto Rico Maritime Shipping Authority*, Civ. No. 84–2748 GG, slip. op. (D.P.R. Oct. 10, 1985) (unpublished). Plaintiff has not perfected an appeal from that order, so we need not treat with it.