USCA1 Opinion

 

 [NOT FOR PUBLICATION--NOT TO BE CITED AS PRECEDENT] United States Court of Appeals For the First CircuitNo. 97-2414 DAVID WOOLER, Plaintiff, Appellant, v. SCOTT HANCOCK, Defendant, Appellee. APPEAL FROM THE UNITED STATES DISTRICT COURT FOR THE DISTRICT OF RHODE ISLAND [Hon. Ernest C. Torres, U.S. District Judge] Before Torruella, Chief Judge, Coffin, Senior Circuit Judge, and Stahl, Circuit Judge.   David Wooler on brief pro se. Marc DeSisto, Kathleen M. Powers, and DeSisto Law Offices onbrief for appellee.  Entered: November 4, 1998       Per Curiam. Plaintiff David Wooler appeals pro sefrom the grant of summary judgment in favor of defendant Scott Hancock, the former town manager for the Town of Narragansett, Rhode Island. The underlying case is a diversity action in the District of Rhode Island for alleged tortious interference with a (prospective) contractual relation. We conclude that summary judgment was improperly granted.  On or about May 2, 1994, Wooler was hired by Betty Cotter to work for Wilson Publishing Company as a reporter for the Narragansett Times (the "Times"). Wooler's job was to cover the Town of Narragansett. Frederick Wilson, III, was the publisher of Wilson Publishing Company. Cotter was the editor for the Times. Cotter was also Wooler's direct supervisor from the time he was hired until sometime later that same year when Cotter went on maternity leave.  Shortly after Cotter went on leave, Hancock (and possibly one or two other town officials) had a meeting with Wilson about Wooler. At the meeting, Hancock complained that Wooler's coverage of the Town was too "negative." He also complained that he and Wooler had a personality conflict, and he suggested that Wooler be transferred to another beat.  Sometime within the next two months, Hancock had lunch with Wilson. At this second meeting, Hancock stated that he would like more "positive" stories about Narragansett. On March 3, 1995, Wilson fired Wooler. Almost one year later, Wooler filed the instant complaint against Hancock alleging tortious interference with his employment "contract." Hancock moved for summary judgment, and the matter was referred to a magistrate judge.  The magistrate judge issued a report recommending that summary judgment be granted in favor of Hancock on the ground that Wooler failed to produce any evidence demonstrating that Hancock played a causal role in his termination. Wooler filed timely objections to the magistrate's report. Upon review, the district judge adopted the magistrate's recommendation. This appeal followed. We review the grant of summary judgment de novo.  Hinchey v. NYNEX Corp., 144 F.3d 134, 140 (1st Cir. 1998). In doing so, we view all disputed facts and reasonable inferences favorable to the nonmoving party. Perez-Trujillo v. Volvo Car Corp., 137 F.3d 50, 52 (1st Cir. 1998). Summary judgment is appropriate only if "there is no genuine issue as to any material fact" and "the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c). The moving party bears the initial burden of demonstrating that there are no genuine issues of material fact for trial. Hinchey, 144 F.3d at 140. After that, the burden shifts to the nonmoving party with respect to each issue on which he bears the burden of proof. Id. Under Rhode Island law, the elements of a cause of action for interference with a prospective contractual relation are: (1) the existence of a business relationship or expectancy, (2) knowledge by the interferor of the relationship or expectancy, (3) an intentional act of interference, (4) proof that the interference caused the harm sustained, and (5) damages to the plaintiff. Mesolella v. City of Providence, 508 A.2d 661, 669 (R.I. 1986). Thus, Wooler bears the burden of proof on the issue of causation. The evidence proffered by Hancock to negate an inference of causation is strong. This evidence includes the deposition testimony of Wilson. Wilson testified that he was the person who made the termination decision, and that Wooler was terminated because of his job performance. According to Wilson, Wooler was not producing enough articles. In particular, Wilson testified that a reporter in Wooler's position is expected to produce five or six stories an issue and that Wooler was not meeting this requirement. Wilson Dep. at 33. Wilson further testified, unequivocally, that Hancock had no impact on the termination decision except, perhaps, to prolong Wooler's employment.  However, there is also evidence in the record tending to support Wooler's version of events. Although, as noted above, the evidence is conflicting on this point, a fact-finder could conclude that Hancock's complaints to Wilson were made during the last two months of Wooler's employment. Such a conclusion lends some support to an inference that Hancock's complaints caused Wooler's termination. Cf. Oliver v. Digital Equip. Corp., 846 F.2d 103, 110 (1st Cir. 1988) (observing that a showing of discharge "soon after" the employee engages in protected activity is indirect proof of a causal connection).  The possible inference is further strengthened by Cotter's deposition testimony that Wilson seemed upset about Hancock's complaints. There is also evidence, in the form of a notice of decision concerning Wooler's unemployment benefits, which could be interpreted as demonstrating a link between Hancock's complaints and Wooler's termination.  In addition, there is evidence based on which a jury could question the credibility of Wilson's explanation for the firing. Among other things, there is evidence from which a jury could conclude that Wooler was, in fact, producing the requisite number of articles. Moreover, Wooler submitted copies of many of these articles. More than one view of these articles is possible, and a fact-finder might conclude that, contrary to Wilson's suggestion, Wooler actually covered a fairly broad range of non-controversial topics. Finally, Wooler proffered deposition testimony of Wilson to the effect that he, Wilson, had heard that Hancock threatened to "freeze" Wooler "out of town hall." Although Wilson denied that the threat concerned him or that it posed a problem for the newspaper, a fact-finder might be skeptical of this denial.  For much the same reason, a fact-finder might be skeptical of Wilson's emphatic statement that his decision to terminate Wooler was not "in any way" affected by Scott Hancock. We recognize that Wooler faces a formidable obstacle in proving causation. The issue turns on Wilson's state of mind, and the most direct evidence of Wilson's state of mind are his own statements. It is not obvious what motive Wilson, a non-party, would have to dissemble. Nonetheless, the weighing of alternative factual scenarios should ordinarily be left to the finder of fact after trial. Hodgens v. General Dynamics Corp., 144 F.3d 151, 172 (1st Cir. 1998); see also Greenburg v. Puerto Rico Maritime Shipping Auth., 835 F.2d 932, 936 (1st Cir. 1987) ("The precincts patrolled by Rule 56 admit of no room for credibility determinations, no room for the measured weighing of conflicting evidence . . . , no room for the judge to superimpose his own ideas of probability and likelihood (no matter how reasonable those ideas may be) upon the carapace of the cold record."). Although Wooler's evidence may be thin, we do not think that this is a case in which the evidence is "so one-sided that one party must prevail as a matter of law." Id.(citation omitted). Accordingly, we vacate the judgment and remand for further proceedings consistent with this opinion.  Vacated and remanded.