Maxinne M. **LAUSELL–ARCHILLA,**
Plaintiff,

v.

Dr. Roberto **HUERTAS–NIEVES,**
et al., Defendant.

No. Civ. 97–2925(DRD).

United States District Court,
D. Puerto Rico.

July 8, 1999.

Francisco J. Colon–Pagan, Colon, Colon & Martinez, San Juan, PR, Jose L. Gonzalez–Castaner, Gonzalez–Castaner, Morales & Guzman, San Juan, PR, Jose A. Gonzalez–Villamil, San Juan, PR, Sigrid Lopez–Gonzalez, San Juan, PR, Dario Rivera–

Carrasquillo, Pinto–Lugo & Rivera, San Juan, PR, Luis Sanchez–Betances, Sanchez Betances & Sifre, San Juan, PR, Lee Sepulvado, San Juan, PR, Jose H. Vivas, Vivas & Vivas, Ponce, PR, for defendant.

Andres Guillemard–Noble, Nachman, Guillemard & Rebollo, Santurce, PR, for plaintiff.

## OPINION AND ORDER

DOMINGUEZ, District Judge.

Pending before the Court is Codefendants' Dr. Carlos Muñoz, his wife Concepción San Julían–Hita's, and their constituted conjugal partnership's (collectively referred to as "Muñoz Defendants") motion for Summary Judgement to dismiss all claims against them. (Docket No. 31). The Plaintiff, Maxinne M. Lausell–Archilla, has filed a timely Opposition. (Docket No. 54). Ms. Lausell–Archilla has invoked the Court's diversity jurisdiction pursuant to 28 U.S.C. § 1332. For the following reasons, the Muñoz Defendants' Motion for Summary Judgment is hereby **DENIED**.

## I

## BACKGROUND

The facts are presented in the light most favorable to the opposing party and drawing reasonable inferences favoring plaintiff. *See Goldman, Antonetti, Ferraiuoli, Axtmayer & Hertell v. Medfit Int'l. Inc.,* 982 F.2d 686 (1st Cir.1993). On December 11, 1995, the Plaintiff's mother, Marisol Archilla–Díaz was admitted to Hospital Hermanos Meléndez ("Hospital") to undergo surgery. She had been diagnosed with a mass in the area of the thyroid gland. Dr. Juan A. Ramírez–Sánchez, who is also a Defendant, was to perform the surgery on Ms. Archilla–Díaz. Immediately before surgery, however, when codefendant Dr. Roberto Huertas was administering anaesthesia, the patient suddenly suffered full cardiac arrest which caused her death.

The Plaintiff, a student and a resident of Washington, D.C., filed suit on December 30, 1997. Ms. Lausell–Archilla claims her mother's death was the result of medical malpractice and because of her mother's death she has suffered tremendously. Dr. Muñoz is the Chief anesthesiologist at the Hospital. The Hospital contracted him to manage the Department of Anaesthesia ("Department").

The Muñoz Defendants moved for summary judgement asserting that because Dr. Huertas was not Dr. Muñoz' "employee," they are not liable for whatever negligence or omission Dr. Huertas may have committed. Rather, the Muñoz Defendants argue that the professional relationship between the two doctors was based on independent contractor status. Conversely, Plaintiff contends that Dr. Huertas was in fact an "employee" of Dr. Muñoz', and not an "independent contractor." Because Dr. Muñoz was the Chief anesthesiologist at the Hospital, Plaintiff argues that under Puerto Rico's statute of vicarious liability Dr. Muñoz is jointly and severally liable to her for the alleged malpractice perpetrated by Dr. Huertas. *See* P.R.Laws Ann. tit. 31, § 5142 (1996).

## II

### SUMMARY JUDGMENT STANDARD OF REVIEW

Summary Judgment is appropriate when "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgement as a matter of law." Fed.R.Civ.P. 56(c); *see Pagano v. Frank,* 983 F.2d 343, 347 (1st Cir.1993); *Lipsett v. University of Puerto Rico,* 864 F.2d 881, 894 (1st Cir.1988). *Brennan v. Hendrigan,* 888 F.2d 189, 191 (1st Cir.1989); *see e.g., Medina–Muñoz v. R.J. Reynolds,* 896 F.2d 5 (1st Cir.1990).

The court must examine the record "in the light most favorable to … the party opposing the motion." *Kennedy v. Josephthal & Co.,* 814 F.2d 798, 804 (1st Cir.1987) (*citing Poller v. Columbia Broadcasting System,* 368 U.S. 464, 473, 82 S.Ct. 486, 491, 7 L.Ed.2d 458 (1962). A "genuine" issue is one that is dispositive, and must therefore be decided at trial. *Mack v. Great Atlantic and Pacific Tea Co.,* 871 F.2d 179, 181 (1st Cir.1989); *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 247–48, 106 S.Ct. 2505, 2510, 91 L.Ed.2d 202 (1986). A "material" fact is one which affects the outcome of the suit and must be resolved before attending to related legal issues. *Mack v. Great Atlantic and Pacific Tea Co.,* 871 F.2d at 181.

According to Rule 56(e), the party moving for summary judgement bears the initial responsibility of demonstrating the absence of a genuine issue of material fact. *Celotex Corp. v. Catrett,* 477 U.S. 317, 323, 106 S.Ct. 2548, 2553, 91 L.Ed.2d 265 (1986). The opposing party must then designate specific facts that show that there is a genuine triable issue. *Id.,* 477 U.S. at 324, 106 S.Ct. at 2553; Fed. R.Civ.P. 56(e).

The Court reiterates and stresses that at the summary judgement level, the evidence must be examined "drawing all reasonable inferences helpful to the party resisting summary judgment." *Cortes–Irizarry v. Corporación Insular,* 111 F.3d 184, 187 (1st Cir.1997); *see United States v. Diebold, Inc.* 369 U.S. 654, 655, 82 S.Ct. 993, 994, 8 L.Ed.2d 176 (1962) (per curiam) ("On summary judgment the inferences to be drawn from the underlying facts [ ] must be viewed in the light most favorable to the party opposing the motion"). If the party opposing summary judgment "generates uncertainty as to the true state of any material fact, the procedural weapon of summary judgement is inappropriate." *Beacon Enterprises v. Menzies,* 715 F.2d 757, 762 (2nd Cir.1983). At this stage, there is "no room for the measured **weighing of conflicting evidence** such as the trial process entails, no room for the judge to superimpose his own

ideas of probability and likelihood....." *Greenburg v. Puerto Rico Maritime Shipping Auth.*, 835 F.2d 932, 936 (1st Cir. 1987) (emphasis added); at summary judgment level there is "no room for credibility determinations [nor to] **weight conflicting evidence**...." *Casas Office Machines v. Mita Copystar America*, 42 F.3d 668, 684 (1st Cir.1994) (emphasis added).

## III

## ANALYSIS

### A. "INDEPENDENT CONTRACTOR" VS. "EMPLOYEE"

In essence, the Muñoz Defendants' Motion for Summary Judgement hinges on the argument that Dr. Huertas was an independent contractor, therefore, pursuant to the law of the Commonwealth of Puerto Rico, Dr. Muñoz cannot be held liable.[1] Puerto Rico's vicarious liability statute provides for the liability of principals for acts of their agents and employees. P.R.LAWS ANN. tit. 31, § 5142 (1996). Hence, the dispositive issue is whether Dr. Huertas is classified as Dr. Muñoz' "employee" or as an "independent contractor." "[I]f a reasonable factfinder, examining the evidence and drawing all reasonable inferences helpful to the party resisting summary judgment, [could] resolve [this] dispute in ... [the moving] party's favor[,]" then summary judgment should be granted accordingly. *Cortes–Irizarry*, 111 F.3d at 187.

The question of whether an individual is an employee versus an independent contractor must be analysed on a case-by-case basis, for there is no precise definition for the term "independent contractor." *Rivera v. Hospital Universitario*, 762 F.Supp. 15, 17 (D.P.R.1991); *Mariani v. Christy*, 73 D.P.R. 782, 797 (1952). The general test to resolve this question employs the following factors: 1) the form and manner of the employment contract concerning provisions of full-time or part-time employment; 2) whether the employment contract provides for vacation time, sick leave, or a retirement program; 3) the extent an nature of control the individual has over the execution of his duties; 4) the form of payment; and 5) the ownership status of equipment which is utilized. *Rivera v. Hospital Universitario*, 762 F.Supp. at 17. No one factor, by itself, is sufficient to establish an individual as an independent contractor. *Id.* In fact, it is unusual to find cases where the distinction between an "independent contractor" and an employee is crystal clear. *Nazario v. Gonzalez*, 101 D.P.R. 569, 572 (1973) (holding that an electrical appliance "representative" and salesperson was not an independent contractor but an employee and as such was entitled to unpaid compensation for accumulated vacation time). In *Landrón v. Labor Relations Board*, 87 D.P.R. 94, 94 (1963), the court expressed the following as to the distinctions between an "employee" and an "independent contractor":

> **[I]t can not be asserted that a particular requisite is determinative** nor that there is a uniform rule which may readily apply to reach the desired conclusion.... **the correct approach is to consider the total of circumstances,** since except for rare instances such a sharp distinction between an employee and an independent contractor can not be drawn with infallible certainty. **Normally in this type of relationship there are indistinct characteristics of either classification. That is why it is necessary to make an analysis of all the circumstances** in order to be able to form a judgment....

> *Id.* (emphasis added).

In *Nieves v. University of Puerto Rico*, 7 F.3d 270, 279 (1st Cir.1993), the court stated that when deciding this issue

---

**1.** The Hospital does not pay Dr. Muñoz a salary and it does not generate direct income from the Department. The Hospital simply benefits by having anesthesiology services available for its patients twenty-four hours per day. (Docket No. 54).

"the totality of circumstances [must be considered], focusing principally on the level of control...."; *see also López v. Nutrimix Feed Co., Inc.*, 27 F.Supp.2d. 292, 298 (D.Puerto Rico 1998). Nevertheless, the most pivotal factor in this determination is **the degree of control, and the actual authority that the principal has over the worker** so as to intervene directly to supervise and evaluate his performance. *See Flores Román v. Ramos González*, 127 D.P.R. 601, 608 (1990).

The Supreme Court of Puerto Rico, in *Flores Román v. Ramos González*, specifically tailored a test applicable to the medical profession. Namely, for a physician to be considered an "independent contractor," and not an "employee," then he or she must have:

(1) earned compensation on a per-patient basis, rather than a flat salary;

(2) personally owned, invested in, or paid for the medical equipment and supplies used to treat patients;

(3) personally owned, invested in, or paid for the facilities which was the site of treatment;

(4) personally hired and supervised his or her own administrative or subsidiary medical personnel;

(5) received no fringe benefits of a type given to the principal's employees (*e.g.*, vacation or sick leave, pension benefits, tax withholding);

(6) held and paid for his or her own medical malpractice insurance policy; or

(7) exercised final judgment as to the appropriate medical treatment to render to patients.[2]

*Id.*, at 609; *Nieves v. University of Puerto Rico*, 7 F.3d at 279 (1st Cir.1993); *see also Rivera v. Hospital Universitario*, 762 F.Supp. 15, at 17 (D.P.R.1991). Notwithstanding these factors, the Court reiterates that above all other elements, "**the most important criteria in the determination of an employee status, *vel non*, is the control the employer may have over the [employee].**" *Lugo v. Matthew Bender & Co.*, 579 F.Supp. at 642 (emphasis added).

In the instant case, the seven (7) factors will be considered by the Court *seriatim*. In performing this analysis the Court finds that Dr. Huertas does not comply with factors one through four and seven. As to the fifth and sixth factors the Court finds that the summary judgment record is devoid of the necessary evidence to make a final determination.

## III

## THE FACTORS

**1) Dr. Huertas earned compensation not on a per-patient basis, but rather on a flat compensation basis.**

█ It is clear that Dr. Muñoz paid Dr Huertas and all other anaesthesiologists a monthly salary based on the number of days worked, the number of nights "on call," and the number of weekends and holidays.[3] *See* Plaintiff's Opposition to Co-

---

**2.** In *Nieves v. University of Puerto Rico*, 7 F.3d at 279 (*citing Flores Román v. Ramos González*, 127 D.P.R. 601, 609 (1990)), instead of the seven (7) factors enumerated in the text of this Opinion and Order, that Court discussed the following five factors that a physician must comply with to be considered an "independent contractor," and not an "employee"; that is, the physician must have: (1) earned compensation on a per-patient basis, rather than a flat salary; (2) received no fringe benefits of a type given to the principal's employees (*e.g.*, vacation or sick leave, pension benefits, tax withholding); (3) personally owned, invested in, or paid for the medical equipment and supplies used to treat patients, or the

facilities which formed the situs of that treatment, or personally hired and supervised her own administrative or subsidiary medical personnel; (4) held and paid for her own medical malpractice insurance policy; or (5) exercised final judgment as to the appropriate medical treatment to render to patients. In the case at hand, the third factor has been subdivided, and the specific order of the cited factors has been interchanged for a clearer enunciation of the law.

**3.** Dr. Muñoz paid the anaesthesiologists $450.00 per day shift, $450.00 per night "on-call" shift, and $800.00 on weekends and

defendant Muñoz' Motion for Summary Judgment, Exhibit A, at p. 19 (hereinafter "Plaintiff's Opposition, Exhibit A") (Docket No. 54). The Department's staff was not paid on a per-patient basis. *See Rivera v. Hospital Universitario,* 762 F.Supp. at 18 ("the defendants were not paid on the basis of how many patients they attended each day"); *cf. Flores Román,* 127 D.P.R. 601 (1990). Furthermore, the anaesthesiologists were assigned to work shifts according to a monthly program schedule. *See* Plaintiff's Opposition, Exhibit A, at p. 20 (Docket No. 54). All of the doctors that worked in the Department complied with filling in time cards and submitting them to Dr. Muñoz' accounting department, as an employee would in the regular course of business. *See* Plaintiff's Opposition, Exhibit A at pp. 27–28 (Docket No. 54); *see also Rivera v. Hospital Universitario,* 762 F.Supp. at 18. Dr. Muñoz assumed the full risks and benefits of managing the Department of Anaesthesia. *See* Plaintiff's Opposition, Exhibit A, at. p. 22 (Docket No. 54). Only Dr. Muñoz, as Chief of the Department of Anesthesiology, invoiced patients. Dr. Huertas neither billed patients directly nor assumed the risk of economic loss. Equally important is the salient fact that Dr. Muñoz guaranteed the anaesthesiologists, including Dr. Huertas, that they would be compensated for shifts worked regardless of the number of anaesthesia procedures administered to patients. In fact, compensation ensued even if no procedure was administered. *See* Opposition Exhibit A, at p. 26. Simply expressed, Dr. Huertas is "not the doc-

tor[ ] of any one patient." *Rivera v. Hospital Universitario,* 762 F.Supp. at 18. Inasmuch as Dr. Huertas did not earn compensation on a per-patient basis, this factor stands squarely against Defendants Muñoz' contention that Dr. Huertas was an independent contractor.

## 2) Dr. Huertas has never owned, invested in, or paid for the medical equipment and supplies used to treat patients at the Department.

Muñoz Defendants have readily admitted that "[a]lthough some of the equipment belonged to Dr. Muños Meléndez, other equipment and the medicine was provided by Hermanos Meléndez Hospital. The nurses were provided by" said Hospital. (Docket No. 59, p. 6). The Muñoz Defendants have conceded to a fact that is *adverse* to their position. What is more, they have mistakenly directed attention to this fact in order to support the contention that Dr. Huertas was an independent contractor. *Flores Román* holds that "[t]he proper focus is not whether the putative principal ... owns or controls the equipment[,] ... but whether the performing party ... uses his own 'tools' to perform the required services." *Nieves v. University of Puerto Rico,* 7 F.3d at 280. Furthermore, the majority of the equipment used by the Department of Anaesthesia was maintained by the Hospital and not the doctor processing anaesthesia.[4] *See* Plaintiff's Opposition, Exhibit A, at. p. 9 (Docket No. 54). Likewise, in the regular course of business the medicine used by the Depart-

holidays. *See* Plaintiff's Opposition, Exhibit A, at p. 19 (Docket No. 54).

4. The evidence submitted to the Court regarding the ownership of the medical equipment used by Dr. Huertas to treat patients is unclear. This issue was first discussed by the plaintiff, in her opposition to the motion for summary judgement, asserting not only that the majority, of it belongs to Dr. Muñoz, but also that he is responsible for maintaining it. *See* Plaintiff's Memorandum of Law in Opposition to Codefendant Muñoz' Motion for Summary Judgment, p. 4 (Docket No. 54). Then, replying to the plaintiff, the moving

party has conceded that "[a]lthough some of the equipment belonged to Dr. Muñoz Meléndez, other equipment and the medicine was provided by Hermanos Meléndez Hospital." *See* Reply to Memorandum of Law in Opposition to Motion to Summary Judgment, p. 6 (Docket No. 59). It is clear, however, that the medical equipment does not belong to Dr. Huertas. Further, from Dr. Munoz' Deposition, the equipment is maintained by the Hospital, and not by Dr. Munoz. *See* Plaintiff's Opposition, Exhibit A, at. p. 9 (Docket No. 54).

ment was purchased by the Hospital. Only a few specialized substances were partly—and in special cases entirely—paid for by the Department. *See* Plaintiff's Opposition, Exhibit A, at. p. 15 (Docket No. 54). Consequently, because the medical equipment was not the property of Dr. Huertas, and giving all reasonable inferences against the movant, the Court finds that this factor stands against Muñoz Defendants' contention that Dr. Huertas was an independent contractor rather than an employee.

### 3) Dr. Huertas did not own, invest in, or pay for the facilities which was the site of treatment.

The facilities are exclusively the property of the Hospital. Furthermore, the Hospital exclusively hired Dr. Muñoz, not Dr. Huertas, to manage the Department of Anaesthesia. *See* Opposition Exhibit A, pp. 6–8 (Docket No. 54). The Hospital did not pay Dr. Muñoz, nor Dr. Huertas, a salary; nor did it receive any money from the Department. The Hospital simply benefited by having anesthesiology services available for its patients 24 hours per day. *See* Opposition Exhibit A, at p. 17 (Docket No. 54). The summary judgement record shows that Dr. Huertas did not own the facilities where he provided medical treatment. The Hospital is the proprietor. Hence, this factor firmly opposes Muñoz Defendants' contention that Dr. Huertas was an independent contractor.

### 4) Dr. Huertas did not hire nor supervise his own administrative or subsidiary medical personnel.

Dr. Muñoz, not Dr. Huertas, was responsible for hiring and compensating the Department's personnel, including anaesthesiologists, nurses, and administrative staff. *See* Plaintiff's Opposition, Exhibit A, at. pp. 9–10, 33 (Docket No. 54). As mentioned above, Dr. Muñoz assumed fully the risks and benefits of managing the Department of Anaesthesia. *See* Plaintiff's Opposition, Exhibit A, at. p. 22 (Docket No. 54). Accordingly, the record is clear that the Department's personnel worked exclusively for Dr. Muñoz.

Dr. Muñoz personally hired the Department's personnel and had the authority to fire them. *See* Plaintiff's Opposition, Exhibit A, at. pp. 33 & 40 (Docket No. 54). Furthermore, both parties agree that before Dr. Muñoz hired an anesthesiologist to work in the Department, the Hospital must first have granted that physician the privileges to practice in its facilities. These privileges were reviewed and renewed every two years. *See* Plaintiff's Opposition, Exhibit A, at. pp. 10–11 & 40 (Docket No. 54). In sum, there is no indication in the record to the effect that Dr. Huertas was responsible of hiring or supervising any medical personnel. Therefore, this is yet another factor that weighs against granting Muñoz Defendants' summary judgment motion.

### 5) Dr. Huertas allegedly did not receive any fringe benefits of the type given to an employee.

The Muñoz Defendants assert that Dr. Huertas "did not have a right to vacation time, sick leave, nor to a retirement program." (Docket No. 59). The truthfulness of this statement is not in question, but no evidence has been provided on the record to support this assertion. Nothing in the summary judgment record mentions a retirement program, and the Court is mindful that it does not have the authority to speculate. *Greenburg v. Puerto Rico Maritime Shipping Authority*, 835 F.2d 932, 936 (1st Cir.1987). "Mere assertions of counsel made in a legal memorandum are insufficient to establish the existence of a genuine issue of material fact." *Transurface Carriers, Inc. v. Ford Motor Co.*, 738 F.2d 42, 45 (1st Cir.1984). Furthermore, the record indicates that the contract between Dr. Muñoz and Dr. Huertas was verbal. *See* Plaintiff's Opposition, Exhibit A, at. pp. 28–29 (Docket No. 54). Accordingly, because the contract between

them was verbal, the specific contents of their contract would be more appropriately ascertained by a jury in court rather than in summary judgement procedure. In any case, the content of Dr. Muñoz and Dr. Huertas' contract must be resolved before attending to related legal issues. *Mack v. Great Atlantic and Pacific Tea Co.,* 871 F.2d at 181. At this stage, there is simply "no room for the measured weighing of conflicting evidence such as the trial process entails, no room for the judge to superimpose his own ideas of probability and likelihood...." *Greenburg v. Puerto Rico Maritime Shipping Auth.,* 835 F.2d 932, 936 (1st Cir.1987).

The Muñoz Defendants also allege that Dr. Muñoz did not retain any income tax on the compensation paid to the Department's staff. *See* Plaintiff's Opposition, Exhibit A, at p. 26 (Docket No. 54). Dr. Muñoz, however, supposedly retained 5% or 7% according to the percentages that correspond to the payments made to subcontractors.[5] However, because Muñoz Defendants have failed to show any evidence to that effect, "[t]he Court has no obligation to play nursemaid to indifferent parties." *Pinto v. Universidad De Puerto Rico,* 895 F.2d 18, 19 (1st Cir.1990).

**6) Dr. Huertas allegedly holds and pays for his own medical malpractice insurance policy, but the evidence regarding this point is incomplete.**

To buttress the contention that the anaesthesiologists are independent contractors rather than employers, the Muñoz Defendants point to the fact that the Department does not pay for malpractice insurance on the behalf of any of its anaesthesiologists. The moving party further argues that each anesthesiologist in the Department was individually responsible for their own malpractice insurance, including Dr. Muñoz and Dr. Huertas. *See* Plaintiff's Opposition, Exhibit A, at. p. 22 (Docket No. 54). A copy of either Dr. Muñoz' or Dr. Huertas' policies are absent from the record. In *Rivera v. Hospital Universitario,* 762 F.Supp. 15, 19 (D.P.R. 1991), the court considered a similar argument and held that

> Although the [moving party] cites to an individual insurance policy that ... [the opposing party] purchased as evidence that he was an independent contractor ... [the evidence presented] clearly indicates that the insurance policy covered the [opposing party's] private practice operation and was not a part of his coverage.... The insurance policy incorporates the office address of Dr. Santiago's private practice, not ... [the Hospital's] office address. Thus ... [this factor] weighs in favor of deeming the defendants employees rather than independent contractors.

In the case at hand, the precise content of both Dr. Muñoz' and Dr. Huertas' insurance policies could be crucial in the final determination of this factor. The moving party, however, has not submitted the insurance policy contract to allow for any kind of determination by the Court. Again, the Court does not have the authority to speculate on this respect. *Greenburg v. Puerto Rico Maritime Shipping Authority,* 835 F.2d at 936. Moreover, the Court must always "draw every reasonable inference helpful to the party resisting summary judgment." *Cortes-Irizarry v. Corporación Insular,* 111 F.3d

---

5. Apparently, this retention is done in compliance with "the regulations entered by the Secretary of the Treasury of the Commonwealth of Puerto Rico regarding the payments made for professional services rendered [by] non-employees." *See* Reply to Memorandum of Law in Opposition to Motion to Summary Judgment, Note 2 of p. 4 (Docket No. 59). However, even if the Court were to assume, *arguendo,* that Dr. Muñoz effectuated this type of retention, it is highly questionable if this factor, alone, would be sufficient to support the proposition that Dr. Huertas was an "independent contractor." *See Nazario v. González,* 101 D.P.R. 569, 574 (1973) (Holding, *inter alia,* that the presence or absence on any one factor is not automatically controlling); *Landrón v. Labor Relations Board,* 87 D.P.R. at 94.

at 187. But most importantly, if the moving party "does not discharge the burden then he is not entitled to [summary] judgment. **No defense to an insufficient showing is required.**" *Transurface Carriers, Inc. v. Ford Motor Co.*, 738 F.2d 42, 45 (1st Cir.1984) (emphasis added). Therefore, because Muñoz Defendants' have not provided the evidence the Court needs to adequately adjudicate this factor (*i.e.*, the insurance policies), the Court must decide this factor against them.

### 7) The exercise of final judgment as to the appropriate medical treatment to render to patients.

█ Finally, the Muñoz Defendants contend that because "Dr. Huertas had liberty and absolute discretion over his actions," this is conclusive evidence that Dr. Huertas was an independent contractor. (Docket No. 59). Dr. Huertas maintained great control over the exercise of his duties. Notwithstanding the fact that Dr. Huertas was essentially free from Dr. Muñoz' **direct** supervision, "it should be noted that independent judgment is inherent to the practice of medicine. Thus, not every medical doctor is an independent contractor merely because of the freedom from direct supervision which their profession entails." *Rivera v. Hospital Universitario*, 762 F.Supp. at 19.

Additionally, the fact that Dr. Muñoz had the authority to hire and, more importantly, to fire the Department's personnel, together with the fact that Dr. Huertas was strictly bound to follow the Hospital's and the Department's By-laws is strong indication of the authority that Dr. Muñoz had over Dr. Huertas. "It is the existence of the right or authority to ... intervene or control on the part of the employer or principal that makes the other person an employee and not an independent contractor." *Lugo v. Matthew Bender & Co., Inc.*, 579 F.Supp. 638, 642 (D.P.R.1984). Moreover, the Hospital's Credentials Committee was in charge of determining whether each doctor had kept his meetings

and medical conventions and fulfilling continuing education requirements. Therefore, "the existence of ... [this] authority to evaluate and control the work of the defendant[ ] ... is another factor which weighs in favor of considering the defendant [an] employee[ ] rather than [an] independent contractor[ ]." *Rivera v. Hospital Universitario*, 762 F.Supp. at 18. Regardless of who supervised Dr. Huertas—whether it was the Hospital, or Dr. Muñoz, or even if it was a joint supervision—the evidence clearly demonstrates that Dr. Huertas was in fact being supervised. And it is the authority the principal has over the worker to directly supervise and evaluate the worker is what matters most when ascertaining the specific nature of a labor relationship. *Flores Román*, 127 D.P.R. at 608.

Therefore, after evaluating the summary judgment record as to this criteria and "drawing all reasonable inferences helpful to the party resisting summary judgment," *Cortes–Irizarry v. Corporación Insular*, 111 F.3d 184, 187, clearly Dr. Huertas did not have the ultimate control over the conditions under which he had to provide medical services at the Hospital. Thus, this factor does not favor a conclusion that Dr. Huertas was an independent contractor.

### IV

### CONCLUSION

After reviewing the record in the light most favorable to the plaintiff, as is required at summary judgment level, the Court finds that there exists a genuine issue of material fact with respect to the nature of Dr. Muñoz and Dr. Huertas' labor relationship. Fed.R.Civ.P. 56(c); *see also United States v. Diebold, Inc.*, 369 U.S. 654, 655, 82 S.Ct. 993, 994, 8 L.Ed.2d 176 (1962) (per curiam); *Cortes–Irizarry v. Corporación Insular*, 111 F.3d 184, 187 (1st Cir.1997); *Flores Román v. Ramos González*, 127 D.P.R. at 609. The Court reaches this conclusion recognizing that

the Supreme Court of Puerto Rico has held that the presence or absence of any one factor is not automatically controlling. *Nazario v. González,* 101 D.P.R. at 574; *Landrón v. Labor Relations Board,* 87 D.P.R. at 94. In fact, the mere presence of some negative factors cannot deny, by itself, the true employer-employee nature of the relationship. *Id.* Therefore, the Court is required to consider attentively the totality of the circumstances of each case, applying a case-per-case analysis. *See Flores Román v. Ramos González,* 127 D.P.R. at 609. The Court reiterates that, above all factors, the most important criteria is the control the employer may have over the employee. *Nieves v. University of Puerto Rico,* 7 F.3d at 279. *Lugo v. Matthew Bender & Co.,* 579 F.Supp. at 642.

In the instant case, the moving party has averred several statements relating to Dr. Huertas' status as an "independent contractor," without serious consideration to whether the facts are truly "undisputed," or if they are substantiated by admissible evidence in the summary judgment record. Fed.R.Civ.P. 56(c). The Muñoz Defendants have simply failed to provide this Court with sufficient evidence to grant summary judgment in their favor. It follows, then, that if a party moving for summary judgment "does not discharge the burden then he is not entitled to judgment. No defense to an insufficient showing is required." *Transurface Carriers, Inc. v. Ford Motor Co.,* 738 F.2d 42, 45 (1st Cir. 1984). The moving party's arguments simply emphasize the weight of a particular criteria. At summary judgment the Court cannot "weigh the evidence," *Casas Office Machines v. Mita Copystar America,* 42 F.3d at 681. Furthermore, the Court may

not stress one particular criteria over another because it is the "totality of the circumstances" that must prevail.[6] *Nieves v. University of Puerto Rico,* 7 F.3d at 278; and moreover, because in this type of relationship (employee-independent contractor) "there are indistinct characteristics of either classification" frequently present. *Landrón v. Labor Relations Board,* 87 D.P.R. 94. Hence, the nature of Dr. Huertas and Dr. Muñoz' labor relationship is a matter best left for a trial on the merits.

WHEREFORE, Muñoz Defendants' Motion For Summary Judgment is hereby **DENIED.**

IT IS SO ORDERED.

---

**6.** Recently, in *Blás Toledo v. Hospital Nuestra Senora De La Guadalupe,* 98 TSPR 111, 1998 WL 476260, (June 30, 1998), pp. 1427–1428, the Supreme Court of Puerto Rico, although not using the phrase "totality of circumstances" applied *de facto* said criteria by using, *inter alia,* the following factors: 1) a flat rate compensation versus a per-patient compensation for anaesthesia services; 2) services

were invoiced directly by the principal, and not by the physician who actually administered the anaesthesia; 3) the principal established the rate of services, not the physician who administered the anaesthesia; and 4) all the medical equipment belonged to the principal. Moreover, using these criteria the Supreme Court in Blás held that defendant was an employee, not an independent contractor.